Chuck GRIFFIN and Knoxville Journal
Corp., Plaintiffs/Appellants,

v.

CITY OF KNOXVILLE,
Defendant/Appellee,

Carole S. Miller, Intervening
Complainant/Appellee.

Donald K. BAGWELL, Plaintiff,

v.

CITY OF KNOXVILLE, Defendant,

Carole S. Miller, Intervening
Complainant.

Supreme Court of Tennessee,
at Knoxville.

Dec. 2, 1991.

Rehearing Denied Dec. 30, 1991.

R. Louis Crossley, Jr., Knoxville, for
plaintiffs/appellants.

Robert S. Stone, Knoxville, for plaintiff,
Donald K. Bagwell.

K. Dickson Grissom, Knoxville, for defendant/appellee, City of Knoxville.

Herbert S. Moncier, Ann C. Short, Knoxville, for appellee, Carole S. Miller.

## OPINION

ANDERSON, Justice.

We granted the plaintiffs' application in order to determine whether deceased's handwritten notes, confiscated at the death scene by a municipal police department in the course of a homicide investigation, are public records available for inspection by the public under Tenn.Code Ann. § 10–7–503 of the Public Records Act. The plaintiff newspaper and television station manager brought this action against the municipality seeking to inspect the deceased's notes. The municipality resisted, contending the notes are not public records. The deceased's widow also intervened, seeking to prevent inspection of the notes based on multiple theories of constitutional, copyright, and privacy violations.

The Chancellor found that the notes were public records subject to inspection. On appeal, the Court of Appeals affirmed the Chancellor's conclusions on the constitu-

tional, privacy and copyright issues, but reversed his ruling that the notes were public records, holding the pivotal issue was the intention of the police department when they took the notes into their custody. We denied the widow's application for appeal, but granted the application of the plaintiffs.

For the reasons stated below, we reverse the Court of Appeals and hold that the notes were received by the municipal police department in connection with the transaction of official business and, therefore, are public records subject to inspection.

## FACTUAL BACKGROUND

On July 17, 1989, the body of State Representative Ted Ray Miller was found in the back bedroom of his home. The police officers summoned to the scene included Detective Tommy Stiles and Criminalistic Specialist John D. White of the Knoxville Police Department. As with any shooting death, Stiles and White began investigating Miller's death with a presumption that it was homicide. When they arrived at the Miller home at apparently 5:30 p.m. and began their investigation, both officers noticed handwritten notes in plain view on the kitchen sink counter. Stiles did not read the notes initially, but instead proceeded to the rear bedroom where he found the body of Miller and a shotgun. White, on the other hand, examined the handwritten notes, compared them to other handwriting in the home, and concluded that the notes had been written by Miller. Upon consideration of the physical evidence at the scene, both officers concluded that the death was a suicide. This physical evidence included the shotgun, the body position, and the handwritten notes found on the kitchen counter. Stiles testified that he considered, but did not rely, on the notes. The officers' conclusion that Miller's death was a suicide was confirmed later that day by the medical examiner.

White, whose job it is to collect evidence, took custody of the shotgun, Miller's wallet, and the three handwritten notes. White later testified that he took the notes into his custody for safekeeping. When White arrived at the police station, he made a copy of the notes, placed them in a personal file in his desk, and returned the originals to Stiles. When he received the originals, Stiles placed them in his desk drawer.

White prepared a "Crime Scene Action Report," on which the notes were marked as "other evidence." White reported that:

Three handwritten notes were found on the kitchen sink. The notes and shotgun were confiscated and the scene photographed. A rough sketch was made of the scene. I went to U.T. Hospital's morgue where I fingerprinted the victim. I returned to KPD where I copied the notes and then gave the originals to Inv. Stiles. I then pulled the victim's fingerprint card # 54612 from our files and made a positive identification.

On the evening of July 17th, at approximately 8:00 p.m., Stiles received a request from Mrs. Miller for the return of the notes left by her husband. Stiles did not return the originals to Mrs. Miller at that time, but he did make copies for her. He delivered the copies, along with Miller's wallet, and advised her the originals would be returned to her the next day.

On the following day, July 18, 1989, the plaintiffs, the Knoxville Journal Corp., through its reporter Chuck Griffin, and Donald Bagwell, the news director of WKXT television in Knoxville, asked for access to the notes and investigative file. The requested access was denied. At approximately 3:00 p.m. that afternoon, Stiles delivered the original notes to the attorney for the Miller family. Before doing so, however, he made a copy of the notes, which was given by the police department later that afternoon to the Federal Bureau of Investigation.

After the trial below, the Chancellor made specific findings of fact and conclusions, among which were that:

While the physical evidence indicates a suicide, the notes further corroborated such fact.... The notes would further substantiate the decision of the KPD to close the investigation as a suicide without suspicion of foul play.

After holding the notes were public records subject to public inspection, the Chancellor ordered the notes sealed pending appeal.

The Court of Appeals reversed, holding that the notes were taken from the home by the police for safekeeping, rather than for evidentiary purposes, and therefore were not records within the meaning of the Public Records Act and not subject to public inspection.

### ANALYSIS

The principal issue in this case is whether the notes written by Miller shortly before his death became public records within the meaning of the Tennessee Public Records Act when they were taken into custody by the Knoxville Police Department in the course of investigating Miller's shooting death. The pertinent section of the Act, Tenn.Code Ann. § 10–7–503 (1987 & Supp.1991), opens "[a]ll state, county and municipal records [for public inspection] unless otherwise provided by state statutes." Section 10–7–504, and the numerous statutes cross-referenced thereunder, create classes of confidential records not subject to inspection. Municipal police department investigative files, however, are not listed in these statutes.

A public record is defined as follows:
"Public record(s)" or "state record(s)" means all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, *or other material regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency.*
Tenn.Code Ann. § 10–7–301(6) (1987) (emphasis added).

This Court has previously decided that a closed investigative file of a municipal police department is subject to public inspection under Tennessee's Public Records Act. *Memphis Publishing Co. v. Holt,* 710 S.W.2d 513 (Tenn.1986). In *Holt,* this Court held that items contained in the closed investigative file of a police department with respect to an incident in which seven persons were killed in a shoot-out with police officers were public records subject to public inspection.

We have approved the holding of our intermediate court, in *Board of Education v. Memphis Publishing Co.,* that applications of applicants for the position of superintendent of schools in the hands of a city school board search committee were public records subject to inspection, because "[t]he applications were received by that body in its official capacity in connection with aforesaid business." *Id.,* 585 S.W.2d 629, 631 (Tenn.App.1979). The Court of Appeals also observed that the five chapters of the Public Records Act "[a]ppear to us to be an all encompassing legislative attempt to cover all printed matter created or received by government in its official capacity and whether intended to be retained temporarily or retained and preserved permanently." *Id.* at 630. Accordingly, the determinative issue becomes whether the notes were obtained by the police department in connection with the transaction of official business, so as to make them public records subject to inspection.

■ The defendant City of Knoxville and Miller's widow contend that the notes were not taken into custody by the Knoxville Police Department in connection with transacting official business. They insist that the police had already decided Miller had committed suicide before they took custody of the notes. As a result, they argue since no crime was committed, there was no official business that could occur from that point in time forward. They contend that the notes were taken for safekeeping purposes only and not for evidentiary purposes and, accordingly, were not placed in an official investigative file. As a result, they say, the notes did not become public records when the investigation was closed.

On the other hand, the plaintiffs argue that the evidence test adopted by the Court of Appeals is improper and contrary to the Chancellor's finding of fact, and that the notes were obtained and retained in the course of the official duty of investigating

a gunshot death. We agree that the evidence test is too restrictive and not the appropriate test to be applied in determining whether material taken into custody by a police department has been received in connection with transacting official business. We think that adopting such a narrow test would unnecessarily restrict access to genuinely public documents and would be contrary to the declared legislative purposes underlying the Public Records Act. The Legislature has declared that the Act "shall be broadly construed so as to give the fullest possible public access to public records." Tenn.Code Ann. § 10–7–505(d) (1987 & Supp.1991). The proper test in determining whether material is a public record remains whether it was "made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency." Tenn.Code Ann. § 10–7–301.

█ Application of this test requires an examination of the totality of the circumstances. We find that both officers arrived at the Miller home in response to an official call to investigate a shooting death, where they found the handwritten notes in plain view. White confirmed the handwriting was Miller's and both officers considered the notes, along with the other physical evidence, in concluding that Representative Miller's death was a suicide rather than a homicide. White, whose job it is to collect evidence, took into custody the shotgun, Representative Miller's wallet, and the three handwritten notes.

As previously noted, White testified he took custody of the notes for safekeeping. One officer's intention, however, is not the sole test of whether or not material is received in connection with the official business of a police department. In this instance, White delivered the originals of the notes to Stiles, who made copies. Those copies were delivered by the police department to the Federal Bureau of Investigation the following day. When Stiles and White filled out their police reports, both noted the existence of the handwritten notes on their reports. Both officers testified that suicide notes were always collected by the department and retained as part of the investigation, and that this was the first instance in 20 years in which the notes were requested to be returned. As White's crime action report aptly demonstrates, the official business of the police department did not end with the mental conclusion of one or more officers in the field that a crime had not been committed. It included the mundane police tasks of making photographs, sketching the death scene, visiting the morgue, making fingerprints, collecting the evidence considered, and preparing written reports documenting the investigation and its results for review by superior officers.

We have determined that the officer's intent in confiscating the notes is only one of the circumstances to be examined to determine whether or not material received by the police department is received in connection with official business. We hold, after examining the totality of the circumstances, that the evidence preponderates in favor of the conclusion that the handwritten notes were received by the Knoxville Police Department in connection with the transaction of official business and, therefore, are a public record.

Accordingly, the judgment of the Court of Appeals is reversed and the trial court judgment is affirmed, but only for the reasons set out herein. We order the notes to be unsealed and made available for public inspection pursuant to Tenn.Code Ann. § 10–7–503 of the Public Records Act. This case is remanded to the trial court for proceedings consistent with this opinion. The costs of the appeal are taxed equally to the defendant City of Knoxville and the intervening complainant Carole S. Miller.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.

**ORDER ON PETITION TO REHEAR**

**PER CURIAM.**

A petition to rehear has been filed in this cause, which the Court has considered and concludes should be denied.

It is so ORDERED.