IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 29, 2001 Session

## ALLISON COATS v. SMYRNA/RUTHERFORD COUNTY AIRPORT AUTHORITY

**Appeal from the Chancery Court for Rutherford County**
**No. 99MI-1476     Robert E. Corlew, III, Chancellor**

---

**No. M2000-00234-COA-R3-CV - Filed December 13, 2001**

---

This action was brought by the plaintiff against the defendant following two requests by the plaintiff pursuant to the Tennessee Public Records Act for certain documents relating to the Smyrna Airport negotiations with Wiggins Group, PLC./Plane Station, Inc. The plaintiff alleged a statutory right to inspect certain documents. Ultimately, the trial court ordered all of the documents released to the plaintiff, but ordered correspondence addressed to or signed by the SRCAA attorney placed under seal pending appeal. The principal issue on this appeal is whether the appellee is entitled to the documents under seal pursuant to Tennessee Code Annotated section 10-7-503.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

Josh A. McCreary, Murfreesboro, Tennessee, for the appellant, Smyrna/Rutherford County Airport Authority.

Allison Coats, Smyrna, Tennessee, Pro Se.

## OPINION

The appellant in this case is a municipal airport authority located at the Smyrna Airport known as the Smryna/Rutherford County Airport Authority ("SRCAA"). The appellee is a resident of Smyrna and, by the date of the appellate court hearing, became a licensed attorney. The appellee appeared in the trial court proceedings *pro se*. The appellee is one of five organizers and directors of a community group known as Concerned Area Residents Get Organized ("CARGO"). The present case arose out of proposed developments and negotiations between the Smyrna Airport and the Wiggins Group, PLC/Plane Station, Inc. ("Wiggins"). The SRCAA was represented by a private attorney in the negotiations. A letter of intent was entered between Wiggins and the SRCAA that contained a confidentiality provision stating:

CONFIDENTIAL INFORMATION. Lessor and Lessee acknowledge that in connection with this letter and the Lease, each will need to provide the other with the confidential information. Each agrees that it will take all reasonable steps to insure that each of its officers, employees, agents and advisors will:

(a)    Keep and safeguard as confidential all such confidential information.

(b)    Use such confidential information solely for the purposes of evaluation regarding and complying with the provisions of the Lease and for purposes of exercising the rights and privileges afforded under the Lease.

(c)    Not to disclose such confidential information except for the purposes described above, or except and in compliance with the requirements set forth above or except as required by law (or any regulations or guidelines having the force of law) or subpoena or by legal process or by any governmental or regulatory agency authority or body or as required by any stock exchange in which shares of Lessee or any affiliate of Lessee are traded or are to be traded. No information shall be deemed confidential information if at the time it was provided by Lessor or Lessee, as applicable, it was in the public domain or if it thereafter enters the public domain other than through the breach of these confidentiality provisions.

On April 6, 1999, the plaintiff and Mr. King, the director of CARGO, entered the SRCAA office and requested certain documents concerning correspondence relating to a lien on the airport property held by Metro/Nashville Airport Authority. All further requests were referred to SRCAA's private attorney. The plaintiff was granted two of the three requested documents. On September 17, 1999, the plaintiff went to the SRCAA office requesting additional documents. She left a written request, address, and phone number at the office. No further contact was made with the plaintiff until she filed a petition.

The plaintiff filed a petition on October 7, 1999 seeking to inspect certain documents pursuant to Tennessee Code Annotated section 10-7-101, et seq. ("Act"). The plaintiff's September 17, 1999 request included seven records or categories of records including: (1) A business plan of Wiggins relative to the development of the Smyrna airport, (2) the source of information of the "Airport Facts" which was released to explain Wiggins' plans, (3) the source of information upon which the Memorandum of Understanding between the Airport Authority and Wiggins Group was based, (4) invoices for Air Cargo Feasibility Study and Strategic Plan prepared by Keiser & Associates and the noise study by PBS&J, (5) proposed lease agreements by Wiggins, (6) counter-proposed lease agreements from SRCAA to Wiggins , and (7) all correspondence between SRCAA and Wiggins

The SRCAA released the majority of the documents, however, the proposed lease agreements and all of the correspondence between SRCAA and Wiggins were not disclosed.

The Chancery Court for Rutherford County ordered the proposed lease agreements disclosed:

[T]he court finds that the Open Records Act applies to the Defendant, and that the Defendant must immediately provide to the Plaintiff access to the following documents: Lease Agreements proposed by Wiggins Group, PLC/Plane Station, Inc.; Lease Agreements proposed by the Defendant to Wiggins Group, PLC/Plane Station, Inc.. . . . The Court further finds that no documents have been identified which constitutes the source of information for a publication introduced known as "Airport Facts" or for a document entitled "Memorandum of Understanding" between the Defendant and Wiggins Group. The Court finds that the business plan of Wiggins Group, PLC/Plane Station, Inc. relative to development at the Smyrna Airport and an invoice for an Air Cargo Feasibility Study and Strategic Plan have been previously introduced.

The trial court denied the appellant's request for stay pending appeal and the leases were released to the appellee. In a memorandum opinion letter submitted by the trial court, after concluding that the leases were public records and that the plaintiff was entitled to them, the court stated:

The correspondence perhaps should be considered differently. If the Defendant claims that the correspondence between Wiggins and the Defendant is protected by the attorney-client privilege, it appears that these documents (or copies thereof) should be filed under seal and examined by the Court in camera, before being further considered. Initially, it would seem that the majority of these documents similarly have been communicated to third parties, and thus are not legitimately subject to the attorney-client privilege. Nonetheless, there may be an element of expectation of privacy in a letter not present in the draft of a contract. Although the letters which are directly between counsel and the agency probably are protected by the attorney-client privilege, communications between the agency and a third party are probably such to release under the Open Records Act.

In a later letter, the court stated:

I have concluded my review of the correspondence submitted to me by Mr. Cope under seal . . . . While I frankly believe that correspondence should fall within a different category under the open records law from legal documents, proposed or completed, I find no legal authority setting forth such a distinction. Upon review of the correspondence, I find nothing which would justify an order preventing their disclosure, although again I will acknowledge that even clothed with the authority of the Court, and with the ability, at least upon initial review, to keep secret all that I see, I continue to have the feeling that a sense of privacy is being invaded when the correspondence is made public. In fairness, it does not appear to the Court that any great amounts of information will be learned by the Plaintiff herein, or any other members of the public from the examination of the correspondence. The

correspondence, of course, contains nothing of a particularly sensitive nature, yet it appears to have been written with the expectation of privacy.

Nonetheless, the law provides that such information is open to the public.

The trial court ordered all correspondence between the SRCAA and Wiggins released pursuant to the Act, but granted a stay of the order relating to correspondence addressed to or signed by the SRCAA attorney.

The appellant maintains that the documents at issue in this appeal include the proposed lease agreements by Wiggins, the counter-proposed lease agreements from SRCAA to Wiggins , and all correspondence between SRCAA and Wiggins. "To avoid being dismissed as moot, . . . issues must . . . remain justiciable throughout the entire course of the litigation, including the appeal." *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996) (citing *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. 1994)). We find that the issues relating to the draft leases and the correspondence that were previously provided to the appellee are moot. Therefore, we take no position as to the previously released documents. At issue on appeal are the documents under seal including correspondence addressed to or signed by the SRCAA attorney ("correspondence").

Our review is governed by the provision of Tenn. R. App. P. 13(d) that "review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." However, with regard to issues of law, the standard of review is *de novo* without a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997); *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 80 (Tenn.1996).

In the present case, we are confronted with the application of the Act to correspondence signed by or addressed to an attorney in the possession of the attorney. Public policy favors the right of citizens to inspect public records. *See City of Jackson v. Jackson Sun, Inc.*, 1988 WL 11515, at *5 (Tenn. Ct. App. 1988). The public's right to access records of governmental entities is very broad, creating a presumption of openness. *See Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 684 (Tenn. 1994); *see also Contemporary Media, Inc. v. City of Memphis*, No. 02A01-9807-CH00211, 1999 WL 292264, at *3 (Tenn. Ct. App. 1999); *see also Arnold v. City of Chattanooga*, 19 S.W.3d 779, 785 (Tenn. Ct. App. 1999); *see also* Tenn. Code Ann. §10-7-503. The Legislature has declared that the Act "shall be broadly construed so as to give the fullest possible public access to public records." Tenn. Code Ann. §10-7-505 (d) (1999); *See also Griffin v. City of Knoxville*, 821 S.W.2d 921, 924 (Tenn. Ct. App. 1991). However, not all public records are open to inspection. *Id.* "The burden of proof for justification of nondisclosure of records sought shall be upon the official and/or designee of the official of those records and the justification for the nondisclosure must be shown by a preponderance of the evidence." Tenn. Code Ann. §10-7-505 (c) (1999).

The appellee maintains that the correspondence sought is within the purview of the Act and the appellant maintains that the correspondence at issue signed by or received by an attorney is not subject to the Act. First, the appellant argues on appeal that the correspondence does not fall within the definition of public "records."

The first issue we address is whether or not the documents in the correspondence are public records within the meaning of the Act. Public records are defined as "all documents, papers, letters, . . . or other material . . . made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency." Tenn. Code Ann. §10-7-301 (6) (1999). Tennessee Code Annotated § 10-7-503 provides "all state, county and municipal records . . . except any public documents authorized to be destroyed . . . shall at all times, during business hours, be open for personal inspection . . . and those in charge of such records shall not refuse such right of inspection . . . *unless otherwise provided by state law*." (Emphasis added).

The final clause of Tennessee Code Annotated section 10-7-503(a) stating that documents are available 'unless otherwise provided by state law' qualifies the presumption of openness by creating a general exception for other state laws protecting documents. *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 785 (Tenn. Ct. App. 1999) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 662 (Tenn. 1996); *Appman v. Worthington*, 746 S.W.2d 165, 167 (Tenn. 1987)).

"The proper test in determining whether material is a public record remains whether it was 'made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency,' " and "[a]pplication of this test requires an examination of the totality of the circumstances." *Id* at 924 (citing Tenn. Code Ann. §10-7-301). The correspondence was 'made' in the course of the entity's official business in connection with official business. In an effort to comport with the Legislature's mandate that the Act be construed broadly as possible, we take the position that the correspondence meets the expansive definition of public record.

Aside from the general exception, T.C.A. 10-7-504, and numerous other statutes cross-referenced create classes of confidential records not subject to inspection. *See Griffin*, 821 S.W.2d 921, 923. Among the exceptions is one for the work product of the Attorney General and Reporter or any attorney thereunder. *Arnold*, 19 S.W.3d 779, 785. Correspondence addressed to or signed by an attorney retained by a public entity is not specifically excluded by the statutes.

An entity cannot protect public records under the Act by shielding them behind a private attorney or otherwise by placing them in the possession of a private entity. If something is a public record, it remains a public record regardless of its physical location. *See Creative Restaurants v. City of Memphis*, 795 S.W.2d 672, 679 (Tenn. Ct. App. 1990).

The appellant argues that the Act is inconsistent with Canon 4. The appellant is not asking this Court to declare the Act unconstitutional. Rather, the appellant argues that the correspondence falls within the broad exception of "otherwise provided by state law" contained in the Act. *See*

Tenn. Code Ann. §10-7-503(a). "It is certainly true that the Legislature is forbidden from destroying an attorney's ability to fulfill his ethical duties to a client." *Memphis Publ'g Co.*, 871 S.W.2d 681, 688. We recognize the competing interests at stake in this lawsuit between the attorney's duty and the right of the public to access public records.

> The competing interests have been addressed previously concerning the Open Meetings Act:

> > In *Smith County Educ. Ass'n v. Anderson*, 676 S.W.2d 328 (Tenn. 1984), we held that a provision of the Tennessee Open Meetings Act which prohibited a public body from holding private meetings could not be construed to prevent a public body from meeting in private with its attorney to discuss pending litigation. If the statute were so construed, we stated, the attorney's ability to fulfill his duty not to reveal its client's secrets would be destroyed.
> > . . . .
> > We emphasize, however, that any attempt to discover material in the possession of a governmental attorney that actually constitutes work product will be unsuccessful for the above-mentioned reasons. Therefore, we expressly invite the Legislature to remedy the underinclusiveness of §10-7-504 by excepting the work product of county and municipal attorneys from public view.

*Id*. at 688-89.

The specific issue in the present case concerns Canon 4 and the general exception contained in the Act. Canon 4 provides "[a] lawyer should preserve the confidences and secrets of a client." Sup. Ct. R. 8, Canon 4.

> 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.
> (B) Except when permitted under DR 4-101(C), a lawyer shall not knowingly:
> (1) Reveal a confidence or secret of a client.
> . . . .
> (C) A lawyer may reveal:
> . . . .
> (2) Confidences or secrets when permitted under Disciplinary Rules or *required by law* or court order.

*Id*. DR 4-101 (Emphasis added).

The preliminary statement to Supreme Court Rule 8 states:

The Canons are statement of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with the legal profession. . . .

The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. . . .

The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.

Sup. Ct. R. 8 Code of Professional Responsibility, Preliminary Statement.

In *Arnold*, the Eastern Section of this Court concluded that work products of an attorney for a governmental entity were not subject to disclosure under the Public Records Act, if the privilege were not waived. The Court stated:

The Public Records Act is to be broadly construed so as to give the fullest possible public access to public records. T.C.A. §10-7-505(d). Yet, that Act creates exception for documents made privileged or protected from disclosure by other state law. Just as important as public access to government records, is the right of a client to effective assistance of counsel. Canon 4 of the Code of Professional Responsibility, mandates that an attorney not betray the confidences of his client. The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear his files will be open to scrutiny upon demand. Moreover, if the client were aware that its secrets, embodied in the attorney's internal memorandum or other document, would all be subject to public scrutiny, it would limit the client's willingness to speak openly with his or her attorney and would consequently affect the attorney's ability to represent his or her client.

*Arnold*, 19 S.W.3d 779, 787.

In the present case, we are not dealing with the work product doctrine. The work product doctrine protects documents of an attorney prepared by the attorney, or another in his behalf, in preparation for trial or anticipation of litigation. *Id*. at 783. Further, the appellant is not arguing attorney-client privilege, having abandoned it in argument. The fact that records are merely signed by or written to an attorney is not sufficient reason to block public access. Even though the public's right of inspection is broad, it is not absolute and important countervailing interests can sometimes outweigh the right and defeat the presumption of openness if provided by law.

The Supreme Court Rules are the law of this State and, therefore, are included in the phrase 'unless otherwise provided by State law.' Tenn. Code Ann. §10-7-503(a). The mandatory disciplinary rules state that "[a] lawyer may reveal confidences and secrets when required by law or court order. DR 4-101(C)(2)." "It is certainly true that the Legislature is forbidden from destroying

an attorney's ability to fulfill his ethical duties to a client." *Memphis Publ'g Co.,* 871 S.W.2d at 688. Thus, an ethical duty of an attorney in The Code of Professional Responsibility may create an exception to the Act. Accordingly, Canon 4 may exempt certain confidences and secrets from inspection under the Act. In *Combined Communications, Inc. v. Solid Waste Region Board*, No. 01-A-01-9310-CN00441, 1994 WL 123831, at *2 (Tenn. Ct. App. April 13, 1994), this Court stated:

> The courts of this state have held that under some circumstances, communications from an attorney to his client that meet the definition of a public record may be exempt from the provisions of Tenn. Code Ann. §10-7-503. However, "the privilege does not extend to communications from an attorney to a client when they contain advice solely based upon public information rather than confidential information."

*Combined Communications, Inc. v. Solid Waste Region Board*, No. 01-A-01-9310-CN00441, 1994 WL 123831, at *2 (Tenn. Ct. App. April 13, 1994) (citing *Bryan v. State of Tennessee*, 848 S.W. 2d 72 (Tenn.Crim.App. 1992)).

Under our exercise of review, the correspondence that is the subject of this litigation does not contain any information of a confidential or secret nature. It cannot be said that as a general rule, Rule 4 applies to all documents written to an attorney or signed by an attorney. The Rule cannot have such a blanket application.

After examining the totality of the circumstances, we affirm the trial court and find that the correspondence addressed to or signed by the SRCAA attorney should be provided to the appellee.

With regard to the documents under seal, we order that the documents remain under seal for the well-stated reasoning by the Western Section of this Court:

Recognizing that the appellate process does not end with this Court, in order to prevent the issue from becoming moot until the judicial process is completed, the original documents initially filed in a sealed envelope with the chancery court and subsequently transmitted to the clerk of this Court in the same manner shall remain sealed and closed under the jurisdiction of the Clerk of this Court until the time for filing an Application for Permission to Appeal to the supreme Court has expired and the mandate of this Court has issued or, in the event Application for Permission to Appeal is made to the Supreme Court, until that Application is acted upon by that Court and a final judgment entered by the Supreme Court.

*City of Jackson v. Jackson Sun, Inc.*, 1988 WL 11515, at *6 (Tenn. Ct. App. 1988).

The judgment of the trial court is affirmed with costs assessed to Appellant.

_____
WILLIAM B. CAIN, JUDGE