# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs May 31, 2002

# J.D. HICKMAN v. TENNESSEE BOARD OF PROBATION AND PAROLE

**Appeal from the Chancery Court for Davidson County**
**No. 00-2350-II    Carol McCoy, Chancellor**

---

**No. M2001-02346-COA-R3-CV - Filed March 4, 2003**

---

Inmate filed a motion for declaratory relief regarding his rights to access certain materials held by the Board of Probation and Parole and sought an order from the trial court mandating the production of those materials at the expense of the Board. The trial court denied the motion for summary judgment filed by the inmate and dismissed the action in its entirety because the requirements for a mandatory injunction had not been met, but stated that the inmate was not prohibited from again seeking the materials by identifying the specific documents he wanted copied and paying in advance for the copies. We affirm the trial court's decision to deny the motion for summary judgment, but reverse the dismissal and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

J.D. Hickman, Mountain City, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Arthur Crownover II, Senior Counsel, for the appellee, Tennessee Board of Probation and Parole.

## OPINION

In this appeal, a *pro se* inmate in the custody of the Tennessee Department of Correction seeks review of the trial court's decision to dismiss his motion for declaratory order in which he sought access to certain records of the Tennessee Board of Probation and Parole.

Mr. Hickman filed a motion for declaratory order in Davidson County Chancery Court seeking a "declaration of his rights under the Tennessee Constitution and the United States Constitution as they relate to the Freedom of Information Act." Mr. Hickman alleged that two

months earlier he had sought information pursuant to the Public Records Act, Tenn. Code Ann. §§ 10-7-501 *et seq.*, which was in the custody and control of the Board and that the Board had not responded to his request after a reasonable amount of time had passed. According to Mr. Hickman, the Board's failure to respond amounted to a refusal of his access to such public records in violation of the Public Records Act. His motion sought an order instructing the Board to allow Mr. Hickman computer access to the information sought, or in the alternative, copies of all of the information sought at the expense of the Board. Mr. Hickman attached what was purported to be a copy of the request sent to the Board, requesting numerous pieces of information from inmate records from 1992 to the present date.

The Board filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12 on the ground that the trial court lacked subject matter jurisdiction under the Uniform Administrative Procedures Act ("UAPA") as the UAPA does not apply to the actions of the Board. The trial court denied the motion to dismiss, stating that the Board's "contention would be correct if this action were being brought pursuant to the UAPA. However, Petitioner appears to be relying solely upon the Tennessee Public Records Act in making his claim for relief."

Mr. Hickman then filed a motion for summary judgment, arguing that there were no factual issues in dispute and that he was entitled to judgment as a matter of law. The Board opposed the motion for summary judgment by submitting the affidavit of Teresa Thomas, General Counsel for the Board, and arguing that the Board never received a request from Mr. Hickman, and even if it had received the request, it would not have complied for various stated reasons.

The affidavit states that Ms. Thomas does not recall receiving a letter from Mr. Hickman which requested certain information and that after checking Mr. Hickman's parole file, she was unable to find a copy of the letter. Ms. Thomas indicated that she had received and responded to other letters from Mr. Hickman in the past. Ms. Thomas summarized the procedure by which the Board grants access to records in compliance with the Public Records Act as follows:

> . . . If a citizen of Tennessee desires to inspect records of the Board of Probation and Parole, he or she must come to the place where the records are kept, during normal business hours, to inspect the records. For example, certain records, such as the main parole files, are kept at the Central Office, 404 James Robertson Parkway, Suite 1300, Nashville, Tennessee. Other records are maintained at the individual field offices across the state.
>
> If a person desires copies of any of the records, the cost is $0.20 per page, payable before the copies are made.
>
> If a person cannot, or chooses not to, come to the place where the records are kept, the person may contact the Board and request copies of the records. The person should describe the records sought and payment of the $0.20 is required before the

records are forwarded to the requesting person. There may also be a shipping charge if the records are voluminous.

Ms. Thomas further explained that the information requested by Mr. Hickman was not available in the manner he requested because the information is not maintained by the Board in the manner specified by Mr. Hickman. Ms. Thomas stated that the majority of the information sought by Mr. Hickman would have to be manually obtained and that some of the information was confidential.

Mr. Hickman responded to the Board's memorandum in opposition to summary judgment by submitting an unauthenticated inmate information request form which sought to verify that a letter was mailed to General Counsel for the Board on June 5, 2000.

The trial court issued an order denying the motion for summary judgment and dismissing Mr. Hickman's action by stating:

> Petitioner [Mr. Hickman] purportedly seeks a declaration of his rights under the Tennessee Public Records Act, T.C.A. § 10-7-501, et seq. Petitioner is actually seeking mandatory injunctive relief. He has requested an order compelling access to records of the Tennessee Board of Probation and Paroles. More specifically, he seeks information regarding all TDOC inmates convicted of class A, B, and C felonies who have been certified for parole since January 1992, and various compilations of data relating to such inmates' parole records. . . .

> . . . .

> As the parties dispute whether or not a formal records request was sent to Respondent [the Board], this is not an appropriate matter for summary judgment. Accordingly, Petitioner's motion for summary judgment is denied. However, this matter should be dismissed for the following reasons.

> Petitioner's initial action was designated as a "Motion for Declaratory Order." As a former lawyer, Petitioner should be aware that all original actions in Chancery Court are commenced by the filing of a complaint, not a motion. Further, the remedy he seeks is not a declaration of his rights, but an order directing that the Respondents provide him with computer access to files, or alternatively, with copies of all the information he seeks, at Respondents' expense. As Petitioner seeks relief in the nature of a mandatory injunction, his request needs to address the requirements for such relief: irreparable harm should the relief not be granted, a likelihood of success on the merits, a balancing of the interests of each party, and the public interest. A review of his pleadings show that Petitioner has failed to demonstrate any irreparable harm. The caselaw clearly states that he is entitled to public records. *Cole v. Campbell*, 968 S.W.2d 274 (Tenn. 1998). Accordingly, he may seek the documents,

if they exist, by mail, provided that he clearly identifies each file and each document that he wants copied and provided that he advance the costs for such copies.

On appeal, Mr. Hickman argues that he was not seeking injunctive relief, but rather a declaration of his rights under the Tennessee Public Records Act. In particular, he avers that he sought a "declaration that [he] must be provided with any and all documents requested (allowable by law, and with payment of the proper cost) by the Appellee; and that all costs be taxed to the Appellee."

## I. Public Records Act

As the trial court correctly stated, this is an action to obtain access to governmental records, and such access is governed by the Tennessee Public Records Act. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002); *Cole v. Campbell*, 968 S.W.2d 274, 275 (Tenn. 1998). Consequently, a court's review of a request for records is governed by the language of the Act. *Tennessean v. Electric Power Bd. of Nashville*, 979 S.W.2d 297, 305 (Tenn. 1998). The Act, Tenn. Code Ann. §§ 10-7-501 *et seq.*, allows citizens to inspect certain public records and provides in part that:

> . . . all state, county and municipal records . . . shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by law.

Tenn. Code Ann. § 10-7-503.

In order to access public records, a citizen[1] must either appear in person during normal business hours at the location where the public records are housed or, if unable to appear in person, the citizen may identify those documents sought by mail to the records custodian so that the records custodian can copy and produce those documents without requiring an extensive search. The custodian may charge a fee for each document that is meant to cover both copying the item and delivering the copies. *Waller v. Bryan*, 16 S.W.3d 770, 774 (Tenn. Ct. App. 1999).

If a person is denied access to public records, the Act itself provides the remedy. Tenn. Code Ann. § 10-7-505 provides:

> (a) Any citizen of Tennessee who shall request the right of personal inspection of any state, county or municipal records as provided in § 10-7-503, and whose request

---

[1] The right to access public records is granted to citizens, and although that term is not expressly defined in the Act, the Tennessee Supreme Court has held that a convicted felon has the same right of access to public records as any other citizen. *Cole*, 968 S.W.2d at 276-77.

has been in whole or in part denied by the official and/or designee of any official, shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access.

The Act directs an aggrieved citizen to file a petition in the chancery court in the county either where the records are located, or in the case of a state department, in the chancery court for Davidson County in order to seek judicial review of the denial of access to public records. Further,

> . . . Upon filing of the petition, the court shall, upon request of the petitioning party, issue an order requiring the defendant or respondent party or parties to immediately appear and **show cause, if they have any, why the petition should not be granted.** A formal written response to the petition shall not be required, and the generally applicable periods of filing such response shall not apply in the interest of expeditious hearings. The court may direct that the records being sought be submitted under seal for review by the court and no other party. The decision of the court on the petition shall constitute a final judgment on the merits.

Tenn. Code Ann. § 10-7-505(b) (emphasis added).

> In accordance with the show cause language emphasized above, the Act specifically provides:
>
> The burden of proof for justification of nondisclosure of records sought shall be upon the official and/or designee of the official of those records and the justification for the nondisclosure must be shown by a preponderance of the evidence.

Tenn. Code Ann. § 10-7-505(c).

In addition, the legislature has also directed that the section of the Act dealing with judicial review of denials of access "be broadly construed so as to give the fullest possible public access to public records." Tenn. Code Ann. § 10-7-505(d).

The Act, therefore, provides not only the means for achieving access to public records, but the remedy for the situation that arises when the governmental entity denies a request to produce the records for whatever reason: a method for judicial review that is explicitly set forth by statute. The Act also provides guidance to the courts in conducting such review.

## II. Summary Judgment

Mr. Hickman filed a motion for summary judgment which the trial court denied based on the existence of a material factual dispute as to whether the Board actually received the request for public records by Mr. Hickman.

The standards for reviewing summary judgments on appeal are well settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State,* 36 S.W.3d 62, 65 (Tenn. 2001).

A party seeking summary judgment has the burden of demonstrating that its motion satisfies the requirements of Rule 56, including its entitlement to judgment as a matter of law. *Carvell v. Bottoms*, 900 S.W.2d 23, 25 (Tenn. 1995); *Jones v. City of Johnson City*, 917 S.W.2d 687, 689 (Tenn. Ct. App. 1995). When a party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts which must be resolved by the trier of fact. *Byrd*, 847 S.W.2d at 215. Summary judgment is not appropriate if the movant cannot demonstrate his entitlement thereto as a matter of law. *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000).

Under the Public Records Act, judicial review is available to a party whose request to inspect public records has been denied. Tenn. Code Ann. § 10-7-505(a). The trial court found there was a factual dispute as to whether Mr. Hickman's request had been received by the Board and, consequently, whether the Board had denied the request.

Mr. Hickman alleged that he sought information from the Board and that the Board did not respond to his request after being given a reasonable time. In response, the Board submitted the affidavit of Teresa Thomas indicating that no one at the Board ever received a request for public records from Mr. Hickman. We agree with the trial court that there is a material dispute of fact as to whether Mr. Hickman was denied access to public records.

Nonetheless, the Board became aware of the request through this litigation and stated it would not have provided the requested material even if it had received the request. We consider that response a denial of access. The Board has put at issue the basis for its refusal to provide Mr. Hickman with the information he requested, and the Board has the burden of justifying nondisclosure. Tenn. Code. Ann. § 10-7-505(c).

### III. Irreparable Harm

The trial court indicated that even if Mr. Hickman's request had been received and denied by the Board, he was still not entitled to relief because he sought "relief in the nature of a mandatory injunction" and he had not addressed or demonstrated the requirements for such an injunction, specifically irreparable harm. We respectfully disagree with the trial court because we conclude that

a citizen seeking access to government records must only meet the requirements set out in the Public Records Act.

Under Tenn. Code Ann. § 10-7-505(a), a party whose request for access to public records has been denied may petition the court for such access and "obtain judicial review of the actions taken to deny the access." Further, "Upon a judgment in favor of the petitioner, the court shall order that the records be made available to the petitioner," absent certain circumstances not here present. Tenn. Code Ann. § 10-7-505(e).

Although the Act also gives the court the power to "exercise full injunctive remedies and relief to secure the purposes and intentions of this section," we find no requirement that a petitioner meet the requirements for an injunction set out in Tenn. R. Civ. P. 65. If a citizen is denied access to a public record, no additional "irreparable harm" must be shown. The legislature has established as public policy the fullest possible access to public records and has determined that denial of access is sufficient herein to warrant court action requiring disclosure. The Act provides that if the court finds that access was improperly denied, (often a determination that the requested records are public records), the court shall order that the records be made available. Consequently, the fact that Mr. Hickman requested such an order does not impose an additional burden. Thus, the trial court applied an incorrect standard to Mr. Hickman's petition. We reverse the trial court's dismissal of Mr. Hickman's action that was based upon his failure to demonstrate irreparable harm.

The trial court also stated, however, that Mr. Hickman was clearly entitled to any public records and that he could "seek the documents, if they exist, by mail, provided that he clearly identifies each file and each document that he wants copied and provided that he advance the costs for such copies." In essence, this statement was a declaration of Mr. Hickman's rights under the Act, as he had requested, but without a determination as to the Board's obligation to produce any specific record, and without an order to the Board to produce the records that met the court's criteria.

IV. Mr. Hickman's Request for Public Records

Mr. Hickman's request stated:

I. I would like to be provided the names and TDOC numbers of all of those concerned in section III; and be provided computer access for the information sought. In the alternative, if such access is denied, then it would become the BOP's burden of providing copies with all the information sought.

II. I would further ask that I be provided a current copy of the ATS (Average Time Served) chart as utilized by the Board of Paroles; and, a copy of the "Policy Guidelines" as provided to the citizenry upon request.

III. Information sought:

A. All class A, class B, and class C felonies where the inmate has been "certified eligible" for parole from 1-1-92 through the present time.

B. Risk factor (points) calculation for all inmates in "A" above.

C. The record of institutional conduct for all inmates in "A" above.

D. The type of crime (and any prior crimes) of the inmates in "A" above.

E. Whether the inmates in "A" above have been previously paroled, and if so, whether paroled on the same crime.

F. The number of inmates in "A" above that were denied parole as "High Risk."

G. The number of inmates in "A" above that were denied parole for "seriousness of the offense."

H. the number and type of "violent" crimes in "A" above.

I. The number and type of "non-violent" crimes in "A" above.

J. For those inmates in "A" above, the percent of the sentence complete at the time of release (violent and non-violent).

K. For those inmates in "A" above that were denied, the reason for denial, as stated on their "written decision."

L. The number of "first time offenders" for those inmates in "A" above.

M. The specific inmates that were "first time offenders" who were denied parole because they were a: judge, attorney, doctor, gay, black, female, or any other "social status" criteria.

N. Specifically the names and TDOC numbers of all persons convicted of theft over $10,000 and theft over $60,000 between 1-1-92 and the present, where:

1. They were first time offenders.

2. Their Risk points were 14 or less.

3. Where their institutional conduct consisted of two "A" offenses, two "B" offenses, or three "C" offenses or less, in the year immediately preceding their parole hearing.

4. The specific crime, and the sentence imposed.

5. Their prior record, if any.

6. Their prior release(s) on parole, if any.

7. Their SED date, and date of parole.

8. If they were denied for parole, the reason for denial, how long they were "put off," and those required to "flatten" and any particular reason stated.

## V. The Board's Justifications

As stated earlier, the Board has the burden of justifying a denial of access. In response to Mr. Hickman's motion for summary judgment, the Board argued: (1) some of its records were confidential; (2) some of the information sought was not kept in the format requested; and (3) it was

not required to do a manual search of its records and compile data for Mr. Hickman. It also argued that complying with the request would be overly burdensome.[2]

With regard to the confidential records argument, the Board asserted in the trial court that some of the information sought by Mr. Hickman was confidential, citing to and attaching a copy of Tenn. Comp. R. & Regs. 1100-1-1-.14 entitled "Confidentiality of Parole and Clemency Records." Confidential records are not subject to disclosure under the Public Records Act, and a "confidential public record" is defined as "any public record which has been designated confidential by statute." Tenn. Code Ann. § 10-7-301(2). The legislature has authorized the Board to "make rules, as to the privacy of such records . . . and their use by others than the board and its staff." Tenn. Code Ann. § 40-28-119(c). The reference "such records" is to those records described in subsection (a) of Tenn. Code Ann. § 40-28-119, to-wit:

> The board shall cause to be kept records which may include social, physical, mental, psychiatric and criminal information for every inmate considered for or released, under its supervision. . . . Such records shall contain reports of probation and parole officers with relation to such probationers and parolees.

The Board's rule identifies information considered confidential and not subject to release.[3] Tenn. Comp. R. & Regs. 1100-1-1-.14. In its filings in the trial court, the Board did not specifically identify those portions of Mr. Hickman's request which involve confidential records. On appeal, the Board has not reasserted its claim to confidentiality of records and, consequently, provides no assistance in identifying specifically what information Mr. Hickman has requested that is protected from release by the rule.

Obviously, the Board is not required to provide to Mr. Hickman any records that are made confidential by a rule promulgated pursuant to a specific grant of statutory authority. However, based upon the generality of the Board's response at trial, and the lack of any mention on appeal, we are unable to determine whether any of the information requested by Mr. Hickman is, in fact, confidential. Consequently, we cannot review the validity of the Board's justification based upon its rule regarding confidentiality.

To the extent the Board is asserting that certain records contain confidential information, not that the entire record itself is confidential, the Tennessee Supreme Court has touched upon the obligation of a government agency to disclose the public portions of such record while deleting any confidential information. *See Tennessean*, 979 S.W.2d at 302. While not adopting it as the law in

---

[2]The memorandum in opposition to summary judgment stated, "Such a request, as the petitioner states in the letter attached to the petition, of essentially all parole-eligible inmates in the Department of Correction, would be clearly onerous, overly burdensome, time-consuming and expensive."

[3]In addition to other items, the Board considers confidential: "Parole Officers' opinions and statements recorded in the case file" and "statements in opposition of a parolee by victims, families of victims, families of inmates; private citizens who request confidentiality, and public officials who request confidentiality."

this state, the Court discussed and quoted a decision by the Kansas Supreme Court, *State ex rel. Stephan v. Harder*, 230 Kan. 573, 641 P.2d 366 (1982). Regarding that opinion, our Supreme Court stated:

> The plaintiffs sought non-exempt medical information from the Secretary of Social and Rehabilitative Services. The defendant asserted, and the testimony showed, that the information sought was contained in the agency's computer system, but was combined with other information that contained confidential information. The evidence also showed that a computer program could be designed to extract the non-exempt material from the confidential information. The trial court ruled that the agency had no duty to segregate the disclosable material, but the Kansas Supreme Court reversed:
>
> > We hold that the [public records] act implies a duty upon the agency to delete confidential and nondisclosable information from that which may be disclosed, and thus to carry out the act's purpose of making available for public inspection all disclosable parts of the public record. Were this not so, any record which an agency is required by law to keep could be rendered inaccessible to public scrutiny by including confidential material therein.

*Tennessean*, 979 S.W.2d at 303 (quoting *State ex rel. Stephan*, 230 Kan. at 583, 641 P.2d at 374).

The dispute in the *Tennessean* case did not involve a claim that portions of the requested records were confidential, so our Supreme Court did not directly address an agency's obligation to delete confidential portions of an otherwise public record. However, we interpret the Court's opinion in the *Tennessean* case to imply that such an obligation may exist, at least where the information is kept in a computer system and, therefore, the deletion can be accomplished electronically.[4] Because we do not know what of the requested information the Board claims is confidential and whether that information is included in a computerized database or only available in hard copy records, we cannot resolve the issue, and cannot determine if an issue exists which requires resolution, based upon the record before us.

In addition to the confidentiality argument, the Board raised other reasons why it was not required to comply with Mr. Hickman's request. The factual basis for those reasons was set out in the affidavit of Teresa Thomas, as follows:

> . . . I have concluded that the information requested is not available in the manner he requests. The Board maintains records of inmates by individual inmate number. In compiling information concerning all inmates convicted of Class A, B, or C felonies

---

[4]The computerized nature of the information is critical to the Court's decision in *Tennessean*, as is explained later in this opinion.

certified eligible for parole from January 1, 1992 through present, a special computer run would have to be performed.

The other information requested would have to, in most instances, be manually obtained. For example, Mr. Hickman asks for the Risk Factor in points for all of those inmates certified as parole eligible from January 1, 1992 through present. This information is only maintained on the guidelines form in an inmate's individual file. It is not placed in a computer. In order to find this information, the file of each inmate would have to be pulled and the form would have to be reviewed to find the individual inmate's specific score.

Several of Mr. Hickman's requests would have to be found, if at all, through a manual search. . . .

Our analysis of these justifications again begins with the Public Records Act. A "public record" is defined in the Act as "all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency." Tenn. Code Ann. § 10-7-301.

Thus, the proper test for determining whether a document or other information is a public record is whether the record was made or received pursuant to law or ordinance in connection with the transaction of official business. *Griffin v. City of Knoxville*, 821 S.W.2d 921, 924 (Tenn. 1991). Application of this test may require an inquiry into the totality of the circumstances surrounding the creation or receipt of the document or information. *Id.*

One issue raised herein by the Board's response is traceable to the requirement that the record be made or received. That is, the Board asserts that some of the information requested by Mr. Hickman is simply not available in a record that the Board has made or received; the Board does not maintain the requested information in a record as defined by the statute. In other words, the Board essentially asserts that Mr. Hickman's request is not for an existing record, but instead would require the Board to create a new record by compiling the information from thousands of existing records.

In *Tennessean*, our Supreme Court considered a "creation of a new record" argument. However, in that case, the Court determined that the requested information had been entered into a computer system and, consequently, "once information is entered into a computer, a distinction between information and record becomes to a large degree impractical." 979 S.W.2d at 304. The Court determined that because the records request did not require the governmental agency to

"compile or collect statistics" or require an interpretation or analysis of data, the determinative question was not about creation of a new record, but was "one of format and access."[5] *Id.*

"Under the facts" of that case, the governmental agency, Nashville Electric Service ("NES"), was required to disclose the requested information. In our opinion, the facts leading to the Court's conclusion were: (1) although NES did not possess a single document containing the requested information (the names, addresses, and telephone numbers of its customers), it did maintain the separate pieces of information in its computer system, but not in the exact format requested;[6] and (2) the requested information could be produced by the governmental agency by having a computer program written to extract the requested information and produce it in the requested format. The agency maintained, and the requestor agreed, that it was entitled to require payment of the costs of the efforts required to produce the information in the format requested. The Supreme Court agreed, stating that the Public Records Act, at Tenn. Code Ann. § 10-7-506(a), specifically allowed an agency to enforce reasonable rules "governing the making of such extracts, copies, photographs or photostats." 979 S.W.2d at 305. The Court held that the Act authorized the agency to require payment for actual costs incurred in disclosing the requested records. *Id.*

The Act envisions that the requestor will personally appear to make the request and will be given access to the public records requested. When personal appearance is not possible, a citizen may request that copies of records be sent to him or her. However,

> If a citizen can sufficiently identify the documents which he wishes to obtain copies of so as to enable the custodian of the records to know which documents are to be copied, the citizen's personal presence before the record custodian is not required. However, the records custodian is not required under the Public Records Act to make the inspection for the citizen requesting the documents. The citizen, to be able to obtain copies of those documents without making a personal inspection, must

---

[5] In distinguishing cases relied upon by Nashville Electric Service, the Court stated:

> The other case relied on by the defendant is *George v. Record Custodian*, 169 Wis. 2d 573, 485 N.W.2d 460 (Wis. Ct. App. 1992). There, an inmate asked for the number of claims received by the Department of Justice from 1988-1990, the number of cases settled without litigation, and the number of cases disallowed. The Wisconsin appellate court held that the records custodian was not required under the public records act to "collect or compile statistics or create a record for the benefit of a requester." 485 N.W.2d at 462.

> In contrast to *Seaton* and *George*, *The Tennessean's* request did not require NES to compile or collect statistics, nor did it require an explanation, interpretation, or analysis of information. NES did not claim that the requested information was exempt from disclosure, nor did it contend that it lacked the information.

*Tennessean*, 979 S.W.2d at 304.

[6] The agency maintained a list of names and addresses. Telephone numbers, needed for service requests and emergency contacts, were not kept on the same list or database.

sufficiently identify those documents so that the records custodian can produce and copy those documents without the requirement of a search by the records custodian. The records custodian can require a charge or fee per copy that will cover both the costs of producing the copies and delivering the copies. It is the opinion of this Court that such was the intent of the Legislature.

*Waller*, 16 S.W.3d at 774.

Based upon the Supreme Court's opinion in *Tennessean*, we conclude that the Board can be required to produce nonconfidential information for Mr. Hickman that is contained in its computer system. The fact that a "special computer run would have to be performed" does not preclude such production; the Supreme Court has held the opposite. We are not certain what "a special computer run" entails, and there is no evidence in the record to more fully explain it. However, also under *Tennessean*, the Board can require that Mr. Hickman pay the costs of producing the information in the format he requested, including the cost of programming the computer to compile and produce the information. There is no information in the record before us regarding the potential cost.

In Ms. Thomas's affidavit, the Board asserted that responses to "several" of Mr. Hickman's requests "would have to be found, if at all, through a manual search." The affidavit provided one specific example: the request for the Risk Factor in points for all of those inmates certified as parole eligible from January 1, 1992, through present. The affidavit states, "This information is only maintained on the guidelines form in an inmate's individual file. It is not placed in a computer. In order to find this information, the file of each inmate would have to be pulled and the form would have to be reviewed to find the individual inmate's specific score."

Based upon *Waller*, we conclude that the Public Records Act does not require a governmental entity to manually sort through records and compile information gained from those records. 16 S.W.3d at 774. A Public Records Act request is not a discovery request pursuant to litigation. A citizen appearing in person could inspect the records and retrieve the information himself or herself. While the inability to appear in person does not relieve the agency from the obligation to provide requested records, there is nothing in the Act which would shift to the agency the burden of manually compiling information from thousands of separate records into a new record. An agency has an obligation, upon payment of reasonable costs, to copy and provide to a nonappearing requestor, those documents or records that are sufficiently identified by the requestor, but has no obligation "to review and search their records pursuant to a Public Records Act request," *Waller*, 16 S.W.3d at 773, or to "compile or collect statistics." *Tennessean*, 979 S.W.2d at 304. We find no language in the Act that would require the Board to go through every parole eligible inmate's file and retrieve the Risk Factor for each so as to compile that information for Mr. Hickman.

On the other hand, if Mr. Hickman had requested a copy of the "guidelines form" referenced in Ms. Thomas's affidavit for each inmate certified as parole eligible from January 1, 1992, the Board would be required to make those copies, if these documents are not confidential, and send them to Mr. Hickman upon payment of reasonable costs. Although each document would have to

-13-

be manually retrieved for copying, a similar effort would be required if a citizen appeared in person and requested access to those documents.[7] Pulling files for review in person does not differ from pulling files to make copies.[8]

Finally, the Board argued that Mr. Hickman must comply with the reasonable procedures established by the Board for requesting documents:

> If a person cannot, or chooses not to, come to the place where the records are kept, the person may contact the Board and request copies of the records. The person should describe the records sought and payment of the $0.20 is required before the records are forwarded to the requesting person. There may also be a shipping charge if the records are voluminous.

The Board stated that Mr. Hickman will have to make a request that identifies the records sought with particularity, and which are not deemed confidential pursuant to Tenn. Code Ann. § 40-28-119 and Rule 1100-1-1-.14 of the Board of Probation and Parole, and prepay the costs of copying and shipping. The trial court made a similar statement regarding Mr. Hickman's right to make another request.

We do not disagree that a request should identify the records which the requestor wants copies of. We cannot determine, however, exactly what fatal lack of specificity exists in Mr. Hickman's request. The Board has not told us or the trial court that it is unable to identify the records requested. Mr. Hickman's request is generally phrased in terms of information he seeks rather than specific documents, and he asks for information regarding a described class of inmates rather than identifying each inmate. Based on the record before us, however, we are not convinced, that this generality provides a sufficient justification for denial of access. In the *Tennessean* case, for example, the request was simply for the names, addresses, and telephone numbers of all the customers of NES. The requestor did not identify or request a specific document containing that information or specify all the customers by name.

The Board has not asserted that it does not have records containing the requested information or that it cannot identify the records requested from the general nature of the request. The Board's obligation to show cause why it is denying access includes a requirement that the Board respond specifically to each request or, in other words, show cause why it is denying access to each requested item so that the court can adequately review its justification. For example, while we agree that the Board is not required to provide access to confidential records, it has not identified those portions

---

[7] The Act provides no basis for denying access to records because granting such access would be "clearly onerous, overly burdensome, time-consuming and expensive."

[8] Obviously, the time and effort involved in making copies is additional to that required to retrieve files. The copy cost charged to citizens making a request for access in person, as well as a citizen making a request by mail, presumably includes this additional cost.

-14-

of Mr. Hickman's request which would require disclosure of confidential records. Thus, neither the trial court nor this court can determine what requests may be justifiably denied on that basis.

Finally, we also agree that the Board can require Mr. Hickman to pay in advance the reasonable costs of producing or delivering copies of the records, including "special computer run" costs, as discussed above.[9] However, according to the record before us, the Board has not calculated what those costs would be or demanded a specific payment from Mr. Hickman as a precondition to supplying the records.

## VI. Conclusion

The trial court's dismissal of this action is reversed because relief under the Public Records Act requires only a showing of entitlement to the records and does not require a finding of irreparable harm. The case is remanded to the trial court for further proceedings that may be necessary to determine whether the Board has met its burden of justifying denial of access as to any part or all of Mr. Hickman's request. Such a determination will likely require that the Board provide more specific explanation of its justifications.

Costs of this appeal are taxed to the appellee, the Tennessee Board of Probation and Parole.

_____
PATRICIA J. COTTRELL, JUDGE

---

[9]We note that although Mr. Hickman originally sought an order in the trial court that the Board bear the cost of producing the information he sought, he does not specifically assert that argument on appeal and has essentially acknowledged that he would be responsible for paying for the reasonable costs of such copies.