IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 19, 2019 Session

**BRADLEY JETMORE v. CITY OF MEMPHIS**

**Appeal from the Chancery Court for Shelby County**
**No. CH-17-1754-3     JoeDae L. Jenkins,  Chancellor**

_____

**No. W2018-01567-COA-R3-CV**
_____

In this case involving the Tennessee Public Records Act ("TPRA"), Tenn. Code Ann. §§ 10-7-101 – 10-7-702 (2012 & Supp. 2019), the petitioner filed a petition alleging that the respondent, the City of Memphis ("the City"), had violated the TPRA by failing to promptly disclose unredacted crash reports for all traffic accidents to which the City's police officers had responded on two specific days in November 2017.  The City filed a motion to dismiss the petition or, in the alternative, to stay proceedings pending resolution of what it averred would be a determinative issue in a related federal case. Following a non-evidentiary hearing, the trial court denied the City's motion to dismiss and motion to stay pending resolution of the federal action.  Finding that the City had violated the TPRA by failing to promptly disclose unredacted crash reports for public inspection, the trial court ordered such disclosure; however, upon also finding that a substantial legal issue was to be determined, the trial court stayed its disclosure order pending resolution of this appeal pursuant to Tennessee Code Annotated § 10-7-505(d)-(e) (2012).  Upon finding that the City's violation of the TPRA had not been willful, the trial court denied the petitioner's request for attorney's fees.  The City timely appealed. During the pendency of this appeal, the federal district court in the related case certified the legal question posed by the City for presentation to the Tennessee Supreme Court, but the High Court subsequently entered an order declining certification.  By the time of oral arguments before this Court, the parties acknowledged that the sole issue remaining for adjudication in this appeal was the petitioner's request for attorney's fees.  We determine that under the version of the TPRA in effect at the time this action was filed, the trial court properly found that the City failed to promptly disclose the public records at issue. We further determine that the City's violation of the TPRA was willful pursuant to Tennessee Code Annotated § 10-7-505(g) (2012).  We therefore reverse the trial court's finding in this regard.  We remand for the trial court to consider, in light of our determination concerning willfulness, whether reasonable attorney's fees incurred during the trial court proceedings should be awarded to the petitioner.  However, because the petitioner has not properly raised an issue concerning attorney's fees on appeal, we deem the petitioner's request for attorney's fees on appeal to be waived.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN
STAFFORD, P.J., W.S. and CARMA DENNIS MCGEE, J., joined.

Justin Joy and Alexander H. Park, Memphis, Tennessee, for the appellant, City of
Memphis.

Douglas R. Pierce and Kyle D. Watlington, Nashville, Tennessee, for the appellee,
Bradley Jetmore.

**OPINION**

I.  Factual and Procedural Background

The petitioner, Bradley Jetmore, initiated the instant action by filing a "Verified
Complaint and Petition for Access to Public Records" against the City in the Shelby
County Chancery Court ("trial court") on December 5, 2017.  Mr. Jetmore asserted that
for several years, he had "regularly and routinely requested traffic accident reports for a
commercial purpose" and that he had the right to do so pursuant to Tennessee Code
Annotated § 10-7-503(a)(2)(A) (Supp. 2019) of the TPRA, which provides in pertinent
part:  "All state, county and municipal records shall, at all times during business hours . . .
be open for personal inspection by any citizen of this state, and those in charge of the
records shall not refuse such right of inspection to any citizen, unless otherwise provided
by state law."

Mr. Jetmore averred in his petition that in the fall of 2017, the City began delaying
the production of accident reports, currently termed "crash reports," for public inspection
and redacting information from the reports that it had not previously redacted.
Specifically, Mr. Jetmore asserted that on November 2, 2017, he had caused to be hand
delivered to the Memphis Police Department ("MPD") a written request for "All Traffic
Accidents/Crash Report(s) responded to by [MPD] on November 1, 2017" ("First
Request") and that on November 3, 2017, he had caused to be delivered an essentially
identical request for all crash reports responded to by MPD on November 2, 2017
("Second Request").[1]

---

[1] It is undisputed that "a request for inspection [of a public record] cannot be required to be initiated by a
written request."  *See Jakes v. Sumner Cty. Bd. of Educ.*, No. M2015-02471-COA-R3-CV, 2017 WL
3219511, at *7 (Tenn. Ct. App. July 28, 2017) (citing Tenn. Code Ann. § 10-7-503(a)).  Although Mr.
Jetmore asserts on appeal that "the City has begun a process of requiring a mere request to inspect records

Mr. Jetmore attached to his petition email correspondence from the City demonstrating that the City had initially replied to his First Request on November 3, 2017, by informing Mr. Jetmore that his request had been assigned a tracking number. Ten days later, on November 13, 2017, Mr. Jetmore received a similar acknowledgment of the Second Request. On November 14, 2017, the City sent Mr. Jetmore a form concerning his Second Request, informing him that it was not practical for the City to promptly respond with records because it had "not yet been determined that the records responsive to your request[s] exist . . . ." On a form dated November 20, 2017, the City informed Mr. Jetmore that it could not yet make records available for inspection in response to his request(s) because "[t]he office [was] still in the process of retrieving, reviewing, and/or redacting the requested records."[2] The City ultimately provided access to the requested records for both days through a response dated November 21, 2017, but did so with certain information redacted, specifically the names, addresses, and telephone numbers of the individuals involved in each accident.

Mr. Jetmore alleged in his petition that the City was in violation of Tennessee Code Annotated § 10-7-503(a)(2)(B) (Supp. 2019), which provides:

> The custodian of a public record or the custodian's designee shall promptly make available for inspection any public record not specifically exempt from disclosure. In the event it is not practicable for the record to be promptly available for inspection, the custodian shall, within seven (7) business days:
>
> (i)   Make the information available to the requestor;
>
> (ii)  Deny the request in writing or by completing a records request response form developed by the office of open records counsel. The response shall include the basis for the denial; or
>
> (iii) Furnish the requestor a completed records request response form developed by the office of open records counsel stating the time reasonably necessary to produce the record or information.

to be in writing," his reference to the record for this allegation is to an averment in his own petition concerning a November 28, 2017 records request not directly at issue in this action.

[2] This November 20, 2017 form referenced the date of Mr. Jetmore's records request as October 6, 2017, which the MPD Supervisor of Records acknowledged through testimony was an incorrect date.

Mr. Jetmore concomitantly filed a motion for a show cause hearing, requesting that the trial court require the City to show cause why it should not be enjoined from: "(i) refusing to produce accident reports for inspection promptly, as it has done for many years in the past; (ii) redacting name, address and phone numbers from the accident reports." *See* Tenn. Code Ann. § 10-7-505(b) (2012) ("Upon filing of the petition [for access to a public record], the court shall, upon request of the petitioning party, issue an order requiring the defendant or respondent party or parties to immediately appear and show cause, if they have any, why the petition should not be granted."). Mr. Jetmore also requested that the trial court enter an order directing the City to produce "all outstanding records requested" "as quickly as possible." Alleging that the City's delay in producing the records was "calculated and willful" and that the redaction of information from the records constituted a "denial of the public right of access to these records," Mr. Jetmore requested an award of attorney's fees and costs pursuant to the TPRA. *See* Tenn. Code Ann. § 10-7-505(g) (providing for a discretionary award of "reasonable costs involved in obtaining the record, including reasonable attorney's fees," against a governmental entity upon a finding that the entity has willfully refused to disclose what it knew to be a public record).

On January 8, 2018, the City filed a motion to dismiss or, in the alternative, to stay the proceedings until a case with a related issue, *Price v. City of Memphis ex rel. Memphis Police Dep't*, No. 2:17-cv-02772-JTF-cgc, 2018 WL 6531751 (W.D. Tenn. Sept. 4, 2018), could be resolved in federal court. The City specifically stated that *Price* was "a federal action pending regarding the information contained in traffic accident reports" and that Mr. Jetmore had intervened as a defendant in that suit. The City, relying on the doctrine of prior suit pending, argued in its motion that because the federal action would involve "the question to be resolved by this Court—whether or not the information contained in accident reports is subject to the Tennessee Public Records Act—this Court should dismiss this action in favor of the earlier suit." In the alternative, the City requested that the trial court enter an order "staying this matter until the Prior Suit has resolved, or at least the proceedings certifying the determinative question in the Prior Suit, as well as this case, have concluded."[3]

---

[3] As this Court has explained:

> The doctrine of prior suit pending has four essential elements: "1) the lawsuits must involve identical subject matter; 2) the lawsuits must be between the same parties; 3) the former lawsuit must be pending in a court having subject matter jurisdiction over the dispute; and 4) the former lawsuit must be pending in a court having personal jurisdiction over the parties." *Comcast of S. v. Elec. Power Bd. of Chattanooga*, No. E2008-01788-COA-R3-CV, 2009 WL 1328336, at *5 (Tenn. Ct. App., filed May 13, 2009) (citing *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618 (Tenn. 2008)) (internal citations omitted).

4

Mr. Jetmore filed a response, together with multiple supporting documents, opposing the City's motion to dismiss and the City's request for a stay of discovery, which Mr. Jetmore characterized as an improper request for a protective order. Mr. Jetmore asserted that the doctrine of prior suit pending was not applicable to this case and that "[t]he City [had] not justified the nondisclosure of the records at issue in this matter." The City filed a reply, again requesting dismissal or, alternatively, a stay. In addition, the City requested a protective order "to protect the City from undue burden or expense." On February 16, 2018, the trial court entered an order denying the City's request for a protective order.

On appeal, the City does not dispute the trial court's conclusion in its final judgment that the City's "justification for the redaction was the threat of potential liability for each alleged improper disclosure of personal information under Tennessee Code Annotated § 55-25-104, as posed by the federal lawsuit styled *Price* . . . ." Tennessee's Uniform Motor Vehicle Records Disclosure Act ("UMVRDA"), codified at Tennessee Code Annotated §§ 55-25-101 – 55-25-111 (2017), provides in § 55-25-104 (2017):

> Notwithstanding any other law to the contrary, except as provided in §§ 55-25-105 – 55-25-107, the department, and any officer, employee, agent or contractor thereof, shall not disclose personal information about any person obtained by the department in connection with a motor vehicle record.[4]

The federal action in *Price* was initiated by two plaintiffs who had been involved in separate automobile accidents in Memphis and objected to telemarketing contacts they subsequently received after the City had purportedly disclosed personal information from the plaintiffs' crash reports to third parties. *Price*, 2018 WL 6531751, at *1. The *Price* plaintiffs alleged that the City had violated Tennessee's UMVRDA and the federal Driver's Privacy Protection Act ("DPPA"), codified at 18 United States Code §§ 2721-2725. *See Price*, 2018 WL 6531751, at *2; *see generally Reno v. Condon*, 528 U.S. 141 (2000). An amended complaint in *Price*, filed in this action by the City as an exhibit to its motion to dismiss, reflects that the plaintiffs also requested that the federal district

---

*Rainbow Ridge Resort, LLC v. Branch Banking & Trust Co.*, 525 S.W.3d 252, 261 n.5 (Tenn. Ct. App. 2016). As the trial court noted, our Supreme Court has held that with the exception of cases involving *in rem* or *quasi in rem* jurisdiction, the doctrine of prior suit pending "is inapplicable when the prior lawsuit was brought in a federal court or in the court of a foreign state." *See West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618, 623 n.5 (Tenn. 2008) (citing *Hubbs v. Nichols*, 298 S.W.2d 801, 802-03 (1956)).

[4] The exceptions provided in Tennessee Code Annotated §§ 55-25-105 – 55-25-107 (2017) are not at issue.

court certify a class consisting of "all other similarly situated individuals who had their personal information exposed and/or used in violation of the DPPA" to render *Price* a class action lawsuit.

The City has maintained before the trial court and on appeal that "the issue to be resolved in both the case before this Court and the Federal Case [*Price*] is whether this information [contained in traffic accident/crash reports] is subject to Tennessee's [UMVRDA]." The City argues that if the information is subject to the UMVRDA, Tennessee Code Annotated § 10-7-504(a)(12) would operate as a qualified exception to the right of inspection of a public record provided for in § 10-7-503(a)(2)(A). Tennessee Code Annotated § 10-7-504(a)(12) (Supp. 2019) states:

> Personal information contained in motor vehicle records shall be treated as confidential and shall only be open for inspection in accordance with title 55, chapter 25.

Mr. Jetmore has asserted before the trial court and on appeal that crash reports are not subject to the UMVRDA. In support of this assertion, Mr. Jetmore relies in part on Tennessee Code Annotated § 55-25-103(8) (2017), which provides:

> "Personal information" means information that identifies a person, including an individual's photograph, or computerized image, social security number, driver identification number, name, address excluding the five-digit zip code, telephone number, and medical or disability information, but does not include information on vehicular accidents, driving or equipment-related violations, and driver license or registration status[.]

On March 23, 2018, Mr. Jetmore filed in the trial court depositions of testimony presented by two representatives of the City: MPD Sergeant William Porter, who testified concerning the policies, procedures, practices, and guidelines employed by MPD officers in creating crash reports, and MPD Supervisor of Records Ruth Murray, who testified concerning policies, procedures, practices, and guidelines for the maintenance of and public access to crash reports in the three years preceding this action. Mr. Jetmore also filed excerpts of legislative history surrounding the 1998 amendment of Tennessee Code Annotated § 55-10-108 ("1998 Amendment").

The relevant portion of the 1998 Amendment added subsection (f), which in the version applicable at the time that Mr. Jetmore commenced the instant petition provided:

> Any report of a motor vehicle accident investigated by the department or prepared pursuant to subsection (b) shall be open to public inspection as a public record under the public records laws compiled in title 10, chapter 7. It is an offense punishable as a Class A misdemeanor for any person to knowingly use the report or information contained in the report for solicitation that is prohibited by a standard of conduct or practice of any profession licensed by the state.

*See* Tenn. Code Ann. § 55-10-108 (2017); *see also* 1998 Tenn. Pub. Acts, Ch. 886 § 3 (H.B. 3012).[5]  As used in this part of Title 55, "'Department' means the department of safety." Tenn. Code Ann. § 55-8-101(18) (Supp. 2019).

Following a non-evidentiary hearing conducted on April 6, 2018, the trial court set forth a ruling from the bench and requested that the parties submit findings of fact and conclusions of law for review.  On June 6, 2018, the trial court entered a "Judgment Granting Relief Pursuant to T.C.A. § 10-7-505 and Order Denying Defendant's Motion to Dismiss and Granting Stay," along with "Findings of Fact and Conclusions of Law." In its conclusions of law, the court found, *inter alia*, that (1) the TPRA required "prompt access" to public records, (2) "crash reports are historically public records that are not exempt from disclosure," (3) the doctrine of prior suit pending was not applicable to this case, and (4) the City's "action in redacting records and delaying their production" was not willful.  In its judgment, the court determined in pertinent part:

> In opposition to [the City's] Motion To Dismiss, [Mr. Jetmore] argues that "crash reports" are not included within the proscription of the UMVRDA, T.C.A. § 55-25-104.  [Mr. Jetmore] submits that Section 55-25-103(8) provides that the proscription against disclosing personal information "does not include information on vehicular accidents, driving or equipment related violation, and driver license or registration status." [Mr. Jetmore] also argues that [MPD] is not equivalent to the "Department" as defined in 55-25-103(1).[6]

---

[5] Effective July 1, 2019, the General Assembly has amended Tennessee Code Annotated 55-10-108(f). *See* 2019 Tenn. Pub. Acts, Ch. 111 § 3 (S.B. 1346).  Although this 2019 amendment does not apply to the instant action, which was commenced in December 2017, we will address the effect of this amendment as needed in a subsequent section of this Opinion.

[6] Tennessee Code Annotated § 55-25-103(1) (2017) provides that as used in Chapter 55, "unless the context otherwise requires," 'Department' means the department of safety, the department of revenue and the county clerk's office when acting as an agent of these departments, or the duly authorized agents or contractors thereof, responsible to compile and maintain motor vehicle records[.]"

On these two points, the Court agrees with [Mr. Jetmore]. The [MPD] does not fit the definition contained in T.C.A. § 55-25-103(1) as an "agent[] or contractor[] [. . .]" thereof, responsible to compile and maintain motor vehicle records. More importantly, the Court concludes the "crash reports" discussed in both lawsuits are synonymous with, and the same as, reports on vehicular accidents and therefore the information collected therein is expressly excluded by the statute. *See* Section 55-25-103(8).

Moreover, Tenn. Code[] Ann. § 55-10-108(f) provides that "any report of a motor vehicle accident investigated [by the department or prepared] pursuant to subsection (b) shall be open to public inspection as a public record under the public record laws compiled in title 10, chapter 7."

When read together the plain meaning of these two statutes, T.C.A. § 55-25-103(8) and T.C.A. § 55-10-108(f), leads the Court to the inescapable conclusion that the legislature intended to allow the disclosure of the personal information captured in vehicular accident reports. . . .

The Court renders judgment in Favor of [Mr. Jetmore]. However, the Court certifies that there exists a substantial legal issue with respect to the disclosure of the documents, which ought to be resolved by the appellate courts.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [Mr. Jetmore's] request for crash reports is Granted. [The City's] Motion to Dismiss or in the Alternative Stay is Denied as to a dismissal of the complaint; however, the matter is stayed in accordance with T.C.A. [§] 10-7-505(d) and (e).

Upon its finding that the City's actions in delaying access to and redacting information from the crash reports were not willful, the trial court denied Mr. Jetmore's request for attorney's fees. The court assessed costs to the City.

As noted by the City, the stay granted by the trial court was of the disclosure order contained within its final judgment and was pending the appellate proceedings in this action. The trial court granted this stay pursuant to Tennessee Code Annotated § 10-7-505(d)-(e), which provides:

(d)     The court, in ruling upon the petition of any party proceeding hereunder, shall render written findings of fact and conclusions of law and shall be empowered to exercise full injunctive remedies and

relief to secure the purposes and intentions of this section, and this section shall be broadly construed so as to give the fullest possible public access to public records.

(e)     Upon a judgment in favor of the petitioner, the court shall order that the records be made available to the petitioner unless:

(1)     There is a timely filing of a notice of appeal; and

(2)     The court certifies that there exists a substantial legal issue with respect to the disclosure of the documents which ought to be resolved by the appellate courts.

Having found that a substantial legal issue existed with respect to the disclosure of the documents and apparently anticipating the timely filing of a notice of appeal, the trial court stayed the disclosure order pending resolution of this appeal.

Upon the City's motion to alter or amend the judgment, the trial court entered an agreed order on August 2, 2018, amending one of its conclusions of law to enlarge the time in which the City would be required to make unredacted copies of crash reports available for public inspection from one business day to three business days. This disclosure order provides:

Therefore, the Court orders the City of Memphis, in the event when a request for an accident report is made, to make unredacted copies of crash reports available for inspection by the public within three business days after a supervising officer completes and submits the crash reports to TITAN [Tennessee Integrated Traffic Analysis Network], except for any information or personal data that might appear on the reports, such as any drivers' license number, deemed confidential under law, including but not limited to Tennessee Code Annotated section 10-7-504, and should be redacted.

Following entry of this order, the City timely appealed.

At the time that the parties to this action filed their initial briefs with this Court, the federal district court had entered an order granting the *Price* plaintiffs' and the City's joint motion for certification of the following question of state law to the Tennessee Supreme Court pursuant to Tennessee Supreme Court Rule 23:

Whether crash reports generated by [the MPD] are considered "motor vehicle records" under Tennessee's UMVRDA.

2018 WL 6531751, at *3. Mr. Jetmore, having been permitted to intervene as a defendant in *Price*, had filed a response in opposition to the motion to certify the question to our Supreme Court. Notably, in the motion for certification, which is in the record before us as an exhibit to Mr. Jetmore's petition, the City took "the position that the UMVRDA does not apply to crash reports, because the reports are not motor vehicle records as defined by that statute, particularly when those records do not contain information actually obtained from the Tennessee Department of Safety and Homeland Security motor vehicle database." It was the *Price* plaintiffs who took the position that the UMVRDA applied to MPD's crash reports.

On May 13, 2019, our Supreme Court entered an order declining certification of the legal question raised in *Price*, stating in pertinent part:

Upon thorough review, the Court finds that the certified question is not one which "will be determinative of the cause" as required by Rule 23, Section 1. Tennessee enacted the Uniform Motor Vehicle Records Disclosure Act, Tenn. Code Ann. § 55-25-101 et seq. ("UMVRDA") in order to implement the federal Driver's Privacy Protection Act, 18 U.S.C. § 2721 et seq. ("DPPA"). The UMVRDA contains a definition of "motor vehicle record" that the District Court describes as "virtually identical" to the definition of "motor vehicle record" in the DPPA. Plaintiffs filed the underlying complaint under the DPPA, which preempts any contrary state law. *See Collier v. Dickinson*, 477 F.3d 1306, 1312 n.3 (11th Cir. 2007) ("[T]he DPPA preempted any conflicting state law that regulates the dissemination of motor vehicle record information. . . . Accordingly, Defendants were bound to follow the mandates of the DPPA, even though a conflicting state law may have existed.") (citing *Reno v. Condon*, 528 U.S. 141 (2000)); *State of Okl. ex rel. Oklahoma Dept. of Public Safety v. U.S.*, 161 F.3d 1266, 1272 (10th Cir. 1998) (explaining that the DPPA "directly regulates the disclosure" of personal information from motor vehicle records "and preempts contrary state law"). Thus, this Court's answer to the certified question will not necessarily be determinative of this cause. Accordingly, this Court, in the exercise of its discretion, denies the certification. *See* Tenn. Sup. Ct. R. 23, § 9; *Seals v. H & F, Inc.*, 301 S.W.3d 237, 241 n.3 (Tenn. 2010).

## II. Issues Presented

The City initially presented the following two issues on appeal, which we have restated as follows:

1. Whether the trial court erred by denying the City's motion to stay proceedings in this action pending a ruling on the City's motion to certify a legal question to the Tennessee Supreme Court, pursuant to Tennessee Supreme Court Rule 23, in the related federal case of *Price*.

2. Whether this Court should stay this case, including enforcement of the trial court's judgment, pending the Tennessee Supreme Court's decision concerning the legal question certified by the federal court in *Price*.

Mr. Jetmore raised two additional issues, which we have similarly restated as follows:

3. Whether the trial court correctly determined that the unredacted crash reports were public records that were required to be disclosed promptly.

4. Whether the trial court erred by finding that the City had not acted willfully in failing to promptly produce crash reports, thereby precluding Mr. Jetmore's claim for attorney's fees.

However, by the time of the parties' oral arguments presented before this Court, the Tennessee Supreme Court had entered its May 2019 order denying certification of the legal question by the federal district court in *Price*, thus rendering any issue concerning a stay moot. Moreover, we determine that the City has essentially waived any argument that the crash reports were not public records by arguing in *Price* that they were public records and by declining to counter that position in its reply brief. *See Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. 1999) ("Under the doctrine of judicial estoppel 'a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by this action.'" (quoting *Obion Cty. v. McKinnis*, 364 S.W.2d 356, 357 (1962)). Therefore, upon the parties' acknowledgment during oral arguments and our own review of the record, we determine that the sole issue remaining for adjudication in this appeal is whether the trial court erred by finding that the City's violation of the TPRA was not willful and accordingly denying Mr. Jetmore's claim for attorney's fees.

### III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court in this case reached its decision following a non-evidentiary hearing with testimony presented solely through deposition. Although we afford a trial court's findings regarding witness credibility with great deference, "appellate courts are not required to give similar deference to a trial court's findings of fact based on documentary evidence such as depositions, transcripts, or video recordings." *Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014).

The remaining justiciable issue on appeal concerns the trial court's denial of Mr. Jetmore's request for attorney's fees upon the trial court's finding that the City's failure to promptly make unredacted crash reports available for public inspection was not willful and upon the trial court's interpretation of the applicable statutory scheme.[7] This Court reviews a trial court's decision concerning attorney's fees according to an abuse of discretion standard. *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) ("[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.") (internal citations omitted). Similarly, we review a trial court's decision concerning whether to award attorney's fees pursuant to a discretionary statutory provision according to an abuse of discretion standard. *See Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 827 (Tenn. Ct. App. 2009).

Statutory interpretation is a question of law, which we review *de novo* with no presumption of correctness. *See In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). Our Supreme Court has summarized the principles involved in statutory construction as follows:

---

[7] The City in its principal brief acknowledges that it is not appealing the denial of its motion to dismiss.

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*Id.* at 613-14.

## IV.  Attorney's Fees in Trial Court

Mr. Jetmore contends that the trial court erred by finding that the City's failure to promptly provide access to unredacted crash reports in violation of the TPRA was not willful and thereby erred by precluding his request for attorney's fees. The City contends that to the extent it delayed producing crash reports for Mr. Jetmore's inspection, it did so to allow time for redaction of citizens' personal information in a good faith attempt to avoid liability for disclosure of personal information under the UMVRDA and the DPPA. Upon careful review of the record and applicable authorities, we determine that in its attempt to avoid potential liability, the City, in opposition to its own understanding of the TPRA, willfully changed its procedure to redact crash reports and delay public access to them in violation of the version of the TPRA that was in effect when Mr. Jetmore commenced this action.

In construing the TPRA, we recognize a "clear legislative mandate" in favor of public disclosure of governmental records. *See Schneider v. City of Jackson*, 226 S.W.3d 332, 340 (Tenn. 2007). As our Supreme Court has explained:

> Tennessee courts have long recognized the public's right to examine governmental records. *See, e.g.*, *State ex rel. Wellford v. Williams*, 110 Tenn. 549, 75 S.W. 948 (1903). In 1957, the General Assembly codified this public access doctrine by enacting the Public Records Act. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). The Public Records Act now "governs the right of access to records of government agencies in this state." *Cole v. Campbell*, 968 S.W.2d 274, 275 (Tenn. 1998). Facilitating access to governmental records promotes public awareness and knowledge of governmental actions and encourages governmental officials and agencies to remain accountable to the citizens of Tennessee. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74-75 (Tenn. 2002).
>
> The Public Records Act broadly defines "[p]ublic record or records" or "state record or records" to include "all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency." Tenn. Code Ann. § 10-7-301(6) (Supp. 2006). Given this definition, the Public Records Act has been described as an "'all encompassing legislative attempt to cover all printed matter created or received by government in its official capacity.'" *Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn. 1991) (quoting *Bd. of Educ. of Memphis City Schools v. Memphis Publ'g Co.*, 585 S.W.2d 629, 630 (Tenn. Ct. App. 1979)). Furthermore, the Public Records Act mandates that "all state, county and municipal records . . . shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law." Tenn. Code Ann. § 10-7-503(a) (Supp. 2006). These statutes create a presumption of openness and express a clear legislative mandate favoring disclosure of governmental records. *See State v. Cawood*, 134 S.W.3d 159, 165 (Tenn. 2004); *Tennessean v. Elec. Power Bd.*, 979 S.W.2d 297, 305 (Tenn. 1998); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 785 (Tenn. Ct. App. 1999).

Moreover, Tennessee citizens denied access to governmental records have the right to file a petition in court and "to obtain judicial review of the actions taken to deny the access." Tenn. Code Ann. § 10-7-505(a) (1999). At the hearing on such a petition, the governmental entity bears the burden of proof and must justify nondisclosure of the record by a preponderance of the evidence. *Id.* § 10-7-505(c). Finally, the General Assembly has directed the courts to construe broadly the Public Records Act "so as to give the fullest possible access to public records." *Id.* § 10-7-505(d). Thus, unless an exception is established, we must require disclosure "even in the face of serious countervailing considerations." *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 684 (Tenn. 1994).

*Id.* at 339-40 (footnote omitted).

The statutory provision concerning a discretionary award of attorney's fees under the TPRA provides:

If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity. In determining whether the action was willful, the court may consider any guidance provided to the records custodian by the office of open records counsel as created in title 8, chapter 4.

Tenn. Code Ann. § 10-7-505(g). Attorney's fees may therefore be awarded if the governmental entity knew the record or records at issue were public and demonstrated willfulness in refusing to disclose the record(s). *Id.* The standard for willfulness as it applies to this analysis under the TPRA was summarized by this Court in *Clarke v. City of Memphis*, 473 S.W.3d 285, 289-91 (Tenn. Ct. App. 2015); *see also Taylor v. Town of Lynnville*, No. M2016-01393-COA-R3-CV, 2017 WL 2984194, at *5-6 (Tenn. Ct. App. July 13, 2017). Working from our Supreme Court's analysis in *Schneider* and other precedent, the *Clarke* Court summarized that "an award of attorneys' fees will be warranted under the TPRA when a municipality denies a records request by invoking a legal argument that has no good faith basis in light of existing law." *Clarke*, 473 S.W.3d at 291 (citing *Schneider*, 226 S.W.3d at 347).

As this Court explained:

Although in *Friedmann* we acknowledged that varying judicial statements had been made on the topic, we stressed that willfulness should be measured "in terms of the relative worth of the legal justification cited by a municipality to refuse access to records." *Friedmann v. Marshall Cnty.*, 471 S.W.3d 427, 439 (Tenn. Ct. App. 2015). In other words, the determination of willfulness "should focus on whether there is an absence of good faith with respect to the legal position a municipality relies on in support of its refusal of records." *Id.* at 438.

In *The Tennessean v. City of Lebanon*, this Court explained that courts employ the following analysis in assessing willfulness:

> Th[e] analysis emphasizes the component of the statutory standard that the entity or its officials know that the record sought is public and subject to disclosure. It evaluates the validity of the refusing entity's legal position supporting its refusal; critical to that determination is an evaluation of the clarity, or lack thereof, of the law on the issue involved.

*The Tennessean v. City of Lebanon*, No. M2002-02078-COA-R3-CV, 2004 WL 290705, at *9 (Tenn. Ct. App. Feb. 13, 2004). If a municipality denies access to records by invoking a legal position that is not supported by existing law or by a good faith argument for the modification of existing law, the circumstances of the case will likely warrant a finding of willfulness.

*Clarke*, 473 S.W.3d at 290.

In the instant appeal, the City has raised issues, undisputedly now moot, concerning the trial court's denial of the City's motion to stay proceedings pending resolution of the question certified by the federal district court in *Price* to the Tennessee Supreme Court. *See City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013) ("An issue becomes moot if an event occurring after the commencement of the case extinguishes the legal controversy attached to the issue or otherwise prevents the prevailing party from receiving meaningful relief in the event of a favorable judgment[.]") (internal citations omitted). The City has not appealed the trial court's finding that under the version of the TPRA then in effect, the unredacted crash reports were public records that were required to be disclosed promptly. Despite Mr. Jetmore's having raised this finding as an issue in his responsive brief, the City has not responded in its reply brief to Mr. Jetmore's argument that the trial court was correct in so finding.

16

Although the City has essentially waived any issue concerning whether its delays and redactions violated the TPRA, in order to consider the City's willfulness or lack thereof, we must initially review the trial court's finding in this regard. Upon thorough review, we agree with the trial court that under the plain meaning of Tennessee Code Annotated § 55-10-108(f) of the TPRA as it existed at the time that this action was commenced, the crash reports were public records, and the personal information contained therein was not exempted from disclosure. *See* Tenn. Code Ann. § 55-10-108(f) (2017) ("Any report of a motor vehicle accident investigated by the department or prepared pursuant to subsection (b) shall be open to public inspection as a public record under the public records laws compiled in title 10, chapter 7.").[8]

We further determine that under the plain language of Tennessee Code Annotated § 55-25-103(6), a crash report does not meet the definition of a "motor vehicle record" as that term is defined in the UMVRDA inasmuch as a crash report is not synonymous with "a motor vehicle operator's or driver license or permit, motor vehicle registration, motor vehicle title, or identification document . . . ." *See In re Estate of Tanner*, 295 S.W.3d at 614 ("When a statute is clear, we apply the plain meaning without complicating the task." (citing *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004))). We therefore agree with the trial court that the prohibition against disclosure of personal information in motor vehicle records, provided in Tennessee Code Annotated § 55-25-104, did not preclude disclosure of personal information in the crash reports that the City was required to make available as public records when Mr. Jetmore made the requests at issue here.[9]

---

[8] We note that Mr. Jetmore has been before this Court previously on a similar issue. In *Jetmore v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2016-01792-COA-R3-CV, 2017 WL 4570413, at *1 (Tenn. Ct. App. Oct. 12, 2017), *perm. app. denied, designated not for citation* (Tenn. Feb. 15, 2018) ("*Jetmore I*"), this Court affirmed the trial court's grant of Mr. Jetmore's petition for injunctive relief requiring the Metropolitan Government of Nashville and Davidson County ("Metro") to allow him to "inspect and obtain copies of traffic accident reports prepared by the [police department] 'promptly.'" This Court also affirmed the trial court's award of attorney's fees to Mr. Jetmore upon determining that the evidence preponderated in favor of the trial court's finding that Metro's violation of the TPRA was willful. *Id.* at *12. However, having been designated as not for citation, *Jetmore I* has no precedential value over the instant action pursuant to Tennessee Supreme Court Rule 4 § E.

[9] The trial court also found and Mr. Jetmore maintains that crash reports, as synonymous with vehicular accident reports, were excluded from the prohibition against disclosure of personal information provided in Tennessee Code Annotated § 55-25-103(8). We find this conclusion to be less clear from the plain language of the statute because "information on vehicular accidents, driving or equipment-related violations, and driver license or registration status" could be interpreted as information concerning the number of accidents and violations a driver has experienced, together with a driver's status, rather than the records themselves. *See* Tenn. Code Ann. § 55-25-103(8). Because we find interpretation of the plain language of the applicable version of § 55-10-108(f) and the definition of "motor vehicle record" under the UMVRDA to be dispositive of the issue at hand, we decline to further address the exclusions provided

17

We note that effective July 1, 2019, the General Assembly has amended Tennessee Code Annotated 55-10-108(f) to, *inter alia*, add the phrase underlined below

> Any report of a motor vehicle accident investigated by the department or prepared pursuant to subsection (b) shall be open to public inspection as a public record under the public records laws compiled in title 10, chapter 7 <u>with the exception of personally identifying information as provided in § 10-7-504(a)(31)</u>.

*See* 2019 Tenn. Pub. Acts, Ch. 111 § 3 (S.B. 1346) (emphasis added). The above sentence is now codified as subsection (f)(1) with subsection (f)(2) now setting forth the penalty for misuse of information obtained under this part. *See id.* Also effective July 1, 2019, the General Assembly has added, subject to being repealed June 30, 2026, subsection (31) to Tennessee Code Annotated § 10-7-504(a), providing that except for certain enumerated exceptions, "personally identifying information of any person named in any motor vehicle accident report is confidential and not open for public inspection," with such personally identifying information delineated in subsection (31)(E) as "(i) Street addresses and zip codes; (ii) Telephone numbers; (iii) Driver license numbers; and (iv) Insurance information." *See* 2019 Tenn. Pub. Acts, Ch. 111 § 1 (S.B. 1346).

We determine that the 2019 amendments do not apply to the instant action because Mr. Jetmore's petition was filed in the trial court in December 2017. However, we do find that the General Assembly's action in so amending the TPRA is indicative of its understanding that such disclosure of personally identifying information in accident reports was not previously prohibited in the statutory scheme. *See In re Estate of Tanner*, 295 S.W.3d at 614 ("We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed." (citing *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)).

In concluding that the City had not acted willfully in violating the TPRA, the trial court found in its conclusions of law that the City's "delay in producing traffic accident reports" and "the redaction of the names, addresses, and telephone numbers within those documents" did not constitute "a denial of the [records] request without justification." The trial court further found that the City's "reasons for redaction, the threat of potential liability due to the disclosure of individuals' names, addresses, and telephone numbers may constitute a legitimate legal reason for withholding the records . . . ." Under the

in § 55-25-103(8). Furthermore, having determined that crash reports do not constitute "motor vehicle records" under the statute, we do not find Mr. Jetmore's emphasis on drivers' telephone numbers, as an item of information collected by officers from those involved in the crashes rather than found on driver's licenses, to be particularly relevant to this analysis.

specific facts of this case, we disagree with the trial court's conclusion concerning willfulness.

The City acknowledges that its delay in producing the crash reports and its redaction of information resulted from its attempt, following the filing of the *Price* lawsuit, to avoid potential liability for disclosure of personal information under Tennessee Code Annotated § 55-25-104 of the UMVRDA and under the federal provisions of the DPPA. We do not find that this rationale constituted "a legal argument" with a "good faith basis in light of existing law" for the City's delay in production and redaction of the crash reports. *See Clarke*, 473 S.W.3d at 290. The City, in its motion to certify the legal question in *Price* asserted that "the UMVRDA does not apply to crash reports, because the reports are not motor vehicle records as defined by that statute . . . ." In *Price*, the City took the position opposite to the very liability argument that it has articulated in this case as its rationale for violating the TPRA. *See Patterson v. Convention Ctr. Auth. of Metro. Gov't of Nashville & Davidson Cty.*, 421 S.W.3d 597, 611 (Tenn. Ct. App. 2013) ("Disclosure of public records is required unless it is clear that a record is excepted either explicitly by the Act or implicitly by application of another state law." (citing *Swift v. Campbell*, 159 S.W.3d 565, 572 (Tenn. Ct. App. 2004))).

A comparison of two recent decisions involving the willfulness analysis under the TPRA is helpful. In support of his position, Mr. Jetmore relies in part on *Taylor*, in which this Court reversed the trial court's finding that the respondent Town of Lynnville ("the Town") had not acted willfully in violating the TPRA when it denied the petitioner's request for access to several public records, including minutes from the Town's board meetings. *See* 2017 WL 2984194, at *1. Concluding that "the Town's effective denial of access was willful inasmuch as it erected several barriers to access that had no basis in law," this Court noted that the Town had "erroneously conditioned [the petitioner's] right to inspect records on the payment of a $150.00 fee" and that the records custodian had informed the petitioner that he could not inspect the records because the custodian had not received a response from her inquiry to the Town's legal counsel. *Id.* at *6-8. In determining that the Town's actions in denying access to the public records was willful under the TPRA, this Court explained:

> In our opinion, it matters not that a records custodian sought out legal advice if the legal position adopted by the records custodian is without any basis in the law or a good faith argument for a modification of the law. After all, governmental entities are themselves charged with fostering access to public records under the TPRA. When a governmental entity is confronted with a public records request, it assumes ultimate responsibility for a faithful and legal administration of the TPRA. Indeed, a governmental entity "cannot remain unknowledgeable of the [TPRA] and

19

authority interpreting it and thereby immunize itself from liability for attorneys fees. A request for access to a public record imposes a duty on the entity to inform itself of its legal obligations." [*Tennessean v. City of Lebanon*, No. M2002-02078-COA-R3-CV, 2004 WL 290705,] at \*9 n.8 [(Tenn. Ct. App. Feb. 13, 2004)]. Although deference to counsel may certainly be advisable, we are of the opinion that such deference does not countenance against a finding of willfulness in situations where there is no good faith legal argument for the denial of access.

*Id.* at 8.

In contrast, this Court in *Scripps Media, Inc. v. Tenn. Dep't of Mental Health & Substance Abuse Servs.*, No. M2018-02011-COA-R3-CV, 2019 WL 3854298, at \*9 (Tenn. Ct. App. Aug. 16, 2019), affirmed the trial court's denial of the petitioners' request for attorney's fees upon determining that the respondent State of Tennessee ("the State") had "arrived at its view that the records here were exempt from disclosure" "under a fair reading of the law" even though this Court ultimately concluded that the State's position was erroneous. The petitioners in *Scripps* were a media company and one of its reporters who had requested public records from two departments of the State concerning "an alleged affair between two State officials that may have involved public funds." *Id.* at \*1. The State had initially refused the reporter access to the records, asserting that the records were part of "an ongoing criminal investigation." *Id.* The trial court had ruled in the State's favor, finding that the records were exempt from disclosure. *Id.* This Court analyzed the State's argument in light of our Supreme Court's holding in *Tennessean v. Metro. Gov't of Nashville & Davidson Cty.*, 485 S.W.3d 857, 859 (Tenn. 2016), that Tennessee Rule of Criminal Procedure 16 provided an exception to the TPRA to shield records in a criminal investigative file from disclosure during the pendency of the investigation. *See Scripps*, 2019 WL 3854298, at \*6-7.

The *Scripps* Court determined, however, that the records sought in *Scripps* had been "non-investigative public records that were created in the ordinary course of business and kept by their respective agencies," rather than "materials found in an investigative file." *Id.* at \*8. Concluding that the State had violated the TPRA, this Court held that "non-investigative public records made in the ordinary course of business, capable of being accessed from their inception by citizens of Tennessee, do not become exempt from disclosure because of the initiation of a criminal investigation in which they become relevant." *Id.* at \*1. In then considering whether the State's violation of the TPRA had been willful, this Court stated the following in relevant part:

A reasonable mind could interpret from the leading cases a kind of blanket exemption for public records relevant to criminal investigations. The State

20

had a tenable, if, in the end, erroneous, basis for acting as it did. We do not find the State's refusal to disclose the records when initially asked "willful" for purposes of Tenn. Code Ann. § 10-7-505(g).

*Id.* at *9.

In the case at bar, we determine the City's actions in denying Mr. Jetmore prompt access to the crash reports and in redacting information from those reports to be more analogous to the Town's actions in *Taylor* than the State's actions in *Scripps*. Ms. Murray, testifying via deposition on behalf of the City regarding MPD policies, procedures, practices, and guidelines for the maintenance of and public access to crash reports, acknowledged that a year prior to the deposition, her office had made available a stack of crash reports for individuals to review in person on a daily basis. She stated that each report was typically available the next business day after a crash had occurred and that the crash reports were not redacted. Although the agreed time frame to be covered by Ms. Murray's testimony had been the three years preceding this action, she acknowledged during her deposition that accident records had been made available in the same way when she took over her position with the City in 1993 and that the same system had been utilized in the intervening years.

According to Ms. Murray, the City's procedure changed in November 2017 when she was instructed by the city attorney to stop setting out a stack of crash reports each day. Ms. Murray testified that she followed the city attorney's instructions the day after she was informed of the change and that when individuals, generally telemarketers, arrived to review crash reports, she told them that she had been instructed by the city attorney not to set out the reports. Ms. Murray explained that from November 2017 forward, the only individuals who could review an unredacted crash report were those involved in the accident. She stated that all other individuals could only review the reports in redacted form and that the City's legal counsel had told her to redact personal information from the crash reports before making them available in response to a request.

The City's longtime practice of making the crash reports available for public inspection indicates that the City knew that the reports were public records under the TPRA. Following the filing of the *Price* lawsuit in October 2017, the City suddenly changed its procedure. According to Ms. Murray's testimony, "always over 100 [accidents] a day" occur in the City. Sergeant Porter, testifying concerning the policies, procedures, practices, and guidelines employed by MPD officers in creating crash reports, explained that upon arriving at an accident scene, an officer's priorities are to assist injured people, clear the scene, and interview those involved before then completing a crash report electronically. According to Sergeant Porter, crash reports would typically be completed as soon as possible and nearly always by the end of an

21

officer's shift. He further explained that a supervisor must review each crash report and approve it before it will be considered complete and that this may result in a delay until the officer who drafted the report can make corrections. Nonetheless, Ms. Murray testified that prior to November 2017, a crash report was typically available for inspection on the next business day after the accident had occurred.

Despite the daily occurrence of accidents and the MPD's policy of having officers promptly complete crash reports, the City initially replied to Mr. Jetmore's November 3, 2017 records requests with a form stating, eleven days after the request had been made, that it was not practical for the City to promptly respond with records because it had "not yet been determined that the records responsive to your request[s] exist . . . ." When the City did provide Mr. Jetmore with access to the requested records, it was through a response dated November 21, 2017, with the personal information of those involved in the accidents redacted. Although Ms. Murray testified that a delay in production of records would have been due in part to the time involved in redacting the crash reports, we note that these redactions were also in response to the City attorney's advice based on potential liability in the *Price* lawsuit. As in *Taylor*, the City delayed production of and redacted the crash reports based on the legal advice of its counsel. *See Taylor*, 2017 WL 2984194, at *8. However, this advice was based on a legal position inapposite to the position the City advocated in the *Price* lawsuit. *See id.* ("[I]t matters not that a records custodian sought out legal advice if the legal position adopted by the records custodian is without any basis in the law or a good faith argument for a modification of the law.").

We conclude that the evidence preponderates in favor of a finding that the City acted willfully in violating the version then in effect of Tennessee Code Annotated § 55-10-108(f) by failing to promptly make the complete crash reports available upon request. We therefore reverse the trial court's finding that the City did not act willfully in violating the TPRA. However, as noted in *Taylor*, "a finding of willfulness does not automatically trigger an award of attorney's fees and other costs" because such an award is discretionary. *See Taylor*, 2017 WL 2984194, at *8 (citing Tenn. Code Ann. § 10-7-505(g)). Accordingly, we remand this case to the trial court to reconsider its decision not to award attorney's fees for services rendered during the trial court proceedings in light of our determination that the City acted willfully. *See, e.g.*, *Taylor*, 2017 WL 2984194, at *8.

V. Attorney's Fees on Appeal

In the conclusion of the argument sections concerning the trial court's denial of attorney's fees in his principal and reply briefs, Mr. Jetmore requests that this Court remand this case to the trial court for consideration of an award of reasonable attorney's fees to him, "including on appeal." However, Mr. Jetmore did not include attorney's fees

on appeal as one of his issues presented to this Court. As our Supreme Court has elucidated:

> Appellate review is generally limited to the issues that have been presented for review. Tenn. R. App. P. 13(b); *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007). Accordingly, the Advisory Commission on the Rules of Practice and Procedure has emphasized that briefs should "be oriented toward a statement of the issues presented in a case and the arguments in support thereof." Tenn. R. App. P. 27, advisory comm'n cmt.

*Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012); *see Owen v. Long Tire, LLC*, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at *4 (Tenn. Ct. App. Dec. 22, 2011) ("The requirement of a statement of the issues raised on appeal is no mere technicality."). Because Mr. Jetmore did not raise the issue of attorney's fees on appeal in his statement of the issues, we determine this issue to be waived. *See Champion v. CLC of Dyersburg, LLC*, 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011) ("An issue not raised in an appellant's statement of the issues may be considered waived.").

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's finding that the City did not act willfully in violating the TPRA. We remand this matter to the trial court for reconsideration of Mr. Jetmore's request for attorney's fees incurred during the trial court proceedings in light of our determination that the City acted willfully and for collection of costs below. We affirm the trial court's judgment in all other respects. Mr. Jetmore's request for an award of attorney's fees on appeal is denied. Costs on appeal are taxed to the appellant, the City of Memphis.

_____
THOMAS R. FRIERSON, II, JUDGE

23